THE CITY OF KANSAS CITY, *Appellee*, v. THE SIHLER HOG CHOLERA SERUM COMPANY et al., *Appellants*.

No. 18,206.

SYLLABUS BY THE COURT.

NUISANCE—*Hog Pens—Garbage Wagons—Injunction.* The allegations of the petition on a demurrer to which the defendants elected to stand, taken as true, showed that a large number of hogs were kept adjacent to the city in such a manner that odors from the place and from garbage hauled thereto were offensive to the people living in the neighborhood and to those who passed along the streets, and offensive to such an extent as to impair the health of citizens and diminish the value of their property. *Held,* to constitute a nuisance, the continuance of which should be perpetually enjoined.

Appeal from Wyandotte court of common pleas. Opinion filed July 16, 1912. Modified.

*C. Angevine, J. K. Cubbison,* and *William G. Holt,* all of Kansas City, for the appellants.

*R. J. Higgins,* city attorney, and *W. H. McCamish,* assistant city attorney, for the appellee.

The opinion of the court was delivered by

WEST, J.: The city of Kansas City sued to enjoin the defendants from hauling garbage and other refuse through its streets in such manner as to permit the emanation of obnoxious odors from its wagons and from keeping and maintaining their hog pens at any place within three miles of the city limits. The petition alleged:

"That the . . . defendants are engaged in the business of feeding a large number of hogs at and adjacent to the city limits of Kansas City, Kansas, to wit: Immediately north of the north line of Beacon Hill Annex, the said north line of Beacon Hill Annex being the north city limits of Kansas City, Kansas. That the exact number of said hogs so kept and fed by the defendants at said place is not to your petitioner known; That the place where the said hogs are kept and fed is adjacent to the city limits of Kansas City, Kansas, and within one-eighth of a mile of said city limits. That within the city limits of Kansas City, Kansas, and within a radius of one-fourth of a mile from the place where said hogs are kept and fed there lives a large number of the residents of Kansas City, Kansas. That the odors from the said hog pen are offensive to the people living in said neighborhood, and particularly to the people passing along the public highways within the city of Kansas City, Kansas, adjacent to the said hog pens.

"Third: That the said hogs so kept in said hog pens are fed with garbage and other refuse collected in Kansas City, Missouri, and hauled in wagons owned and controlled by the said defendants through the streets of Kansas City, Kansas, to the said hog pens. That the said wagons are so constructed as to permit, and they do permit, emanation therefrom of obnoxious odors when passing through the streets of Kansas City, Kansas. That when the contents of said wagons are deposited in said hog pens they likewise cause obnoxious odors to arise so as to affect the people passing along the public highways within the city of Kansas City, Kansas, adjacent to the said hog pens.

"Fourth: That by reason of the matter complained

of the value of the property adjacent to said hog pens has been greatly lessened and diminished, and the health of the residents living adjacent to said hog pens has been and will continue to be impaired. That the carrying on of the business of hog feeding so adjacent to the city of Kansas City, Kansas, is a public nuisance."

A demurrer was interposed on the ground that no cause of action was stated, and this being overruled the defendants elected to plead no further, whereupon the trial court ordered:

"That the defendants and each of them, their agents, servants and employes be, and they are hereby perpetually restrained and enjoined from so hauling garbage and other refuse through the streets of Kansas City, Kansas, as to cause obnoxious odors to emanate therefrom. It is by the court ordered that the defendants and each of them, and their agents, servants and employes be perpetually restrained and enjoined from feeding, keeping or maintaining more than ten hogs on the premises heretofore used by them as a hog feeding lot; and it is further likewise ordered that the defendants and each of them, their agents, servants and employes, be likewise perpetually restrained and enjoined from establishing a hog feeding lot where more than ten hogs will be fed, kept or maintained within three miles of the city of Kansas City, Kansas. It is further ordered that the plaintiff herein shall recover its costs from the defendants, which costs are taxed at $30.20."

The defendants appeal.

It is insisted that there are not sufficient facts well pleaded to form a basis for any injunction. While the allegations are not very specific, yet an admission of their truth amounts to a concession that the defendants were feeding a large number of hogs adjacent to the city in such a manner that the odors from the place and from the garbage hauled thereto were offensive to the people living in the neighborhood and to those who passed along the streets, and offensive to such an extent as to impair the health of citizens and diminish

the value of their property.   Bouvier defines a nuisance as "anything that unlawfully worketh hurt, inconvenience, or damage."   It is true, as urged by the defendants, that everything which may offend those of highly sensitive nerves or of diseased condition may not be a nuisance in contemplation of law, but a thing which is so conducted as to cause noxious odors to emanate to the extent of impairing health and injuring the value of property comes within all the legal definitions.   (5 Words and Phrases, pp. 4855-4866.) As laid down by Cyc:

"There must be, not merely a nominal, but such a sensible and real damage as a sensible person, if subjected to it, would find injurious, regard being had to the situation and mode of occupation of the property injured. . . . It is well established that noxious smells may constitute a nuisance, although they are not unwholesome or injurious to the health but merely offensive and unpleasant.   But every disagreeable smell is not an actionable nuisance, for considerations as to the extent of the injury or annoyance arise in connection therewith."   (29 Cyc. 1154, 1187.)

The underlying doctrine of the law of nuisance is that one shall not be permitted to use his own property so as to injure another.   In *Longnecker v. Railroad Co.*, 80 Kan. 413, 102 Pac. 492, it was said that while the plaintiff might for brief periods occupy the street in front of his barn for carrying on the business of feeding and selling horses and the profession of veterinary surgeon, still "the plaintiff has no right to use the street in front of his premises as a sort of equine hospital for the regular practice of his profession."   (p. 422.)

In *Stotler v. Rochelle*, 83 Kan. 86, 109 Pac. 788, the following expressions are found among the quotations approved by the court:

"It is quite clear that the law does not recognize any legal right in anyone to compel his neighbor to follow his tastes, wishes or preferences, or to consult his mere convenience.   He can not dictate the style of archi-

tecture or, generally, the location of the buildings—
or maintain that an unsightly or ill-proportioned ed-
ifice is a nuisance because it offends his eye, or his
too cultivated taste. . . . The diminution of the
market value of adjacent buildings, by such use, will
not of itself make it a nuisance. But there is a limit
to such right. No man is at liberty to use his own
without any reference to the health, comfort or reason-
able enjoyment of like public or private rights by
others. Every man gives up something of this ab-
solute right of dominion and use of his own, to be
regulated or restrained by law, so that others may not
be hurt or hindered unreasonably in the use and en-
joyment of their property. . . . This illegal, un-
reasonable and unjustifiable use to the injury of another,
or of the public, the law denominates a nuisance.
. . . One of the great difficulties in defining a
nuisance technically is to describe the degree of an-
noyance necessary to cause the actionable injury.
. . . The determination, however, of the question
rests in sound judgment and depends upon common
sense in each case. . . . Even that which causes a
well-founded, reasonable apprehension of damage may
be a nuisance. . . . Thus a business or erection
which should be located in a remote locality may be a
nuisance merely because located in a residence or pop-
ulous neighborhood. . . . The question is one of
reasonableness or unreasonableness in the use of prop-
erty, and this is largely dependent upon the locality
and its surroundings." (pp. 88-90.)

After reviewing many authorities the court said:

"However carefully the hospital might be conducted,
and however worthy the institution might be, its mere
presence, which would necessarily be manifested in
various ways, would make the neighborhood less de-
sirable for residence purposes, not to the oversensitive
alone, but to persons of normal sensibilities. The court
concludes that upon these considerations the injunction
was rightfully granted." (p. 91.)

In *Gilmore v. Salt Co.*, 84 Kan. 729, 115 Pac. 541, it
was said:

"We regard it as well settled by the weight of au-
thority, and in accordance with sound reason, that one
has no right to deposit upon his land refuse matter of

any sort, whether in itself offensive or not, by which the water underlying his neighbor's land may be so affected through percolation as to be unfitted for its ordinary use, or injurious to vegetation." (p. 733.)

In *The State v. Lindsay*, 85 Kan. 79, 116 Pac. 207, it was held that the maintenance of an asylum or retreat could be enjoined because the character of its inmates and their conduct caused fear, consternation and disturbance of the peace in the community.

We have nothing to consider but the petition itself and we think its allegations taken as true show that the place complained of is so conducted as to be a nuisance and that the plaintiff is entitled to a perpetual injunction to prevent the continuance thereof; also to prevent the hauling of garbage or other refuse through the streets so as to cause offensive odors to emanate therefrom. The question, however, as to the location of defendants' business at some other place was not before the court and is not for determination.

The judgment is modified, and is affirmed so far as indicated in the foregoing paragraph.