A. S. WORK, *Appellant*, v. DOROTHY WORK, *Appellee*.

No. 18,186.

SYLLABUS BY THE COURT.

1. EJECTMENT—*Title to Real Estate—Will—Conflicting Evidence*. The title to a tract of land appeared of record in the name of George Z. Work at the time of his death. He left a will devising his entire estate to his widow. In the envelope enclosing the will was found a paper stating that his brother, A. S. Work, owned a half interest in the farm "after he pays for what money I have spent on same as shown by my checks and books." In an action of ejectment brought by A. S. Work against the devisee the plaintiff was defeated upon the following claims of legal and equitable ownership:

A. That at the time of George Z. Work's death the farm was a part of the assets of a partnership composed of the plaintiff and George Z. Work, in which they shared equally.

B. That the widow was estopped to dispute the plaintiff's claimed interest in the farm because of certain conduct of hers upon which he had relied.

The testimony took a wide range and covered the subject of compliance with the terms of the writing found with the will. *Held,* the rule applies that so far as a judgment depends upon conclusions of fact drawn from conflicting evidence, a material part of which consists of oral testimony, it will not be disturbed on appeal.

2. TRIAL—*Rejected Evidence—Not Prejudicial Error.* Claims of error based upon the refusal of the court to admit evidence offered by the plaintiff considered, and *held:* The evidence was improper, or inconsequential, or covered by other proof, or not properly presented to the trial court at the hearing of the motion for a new trial.

3. EVIDENCE—*Sufficient Description of Real Estate.* Under the circumstances stated in the opinion a description of real estate as "476 acres of land near Humboldt, Kansas, that Work Brothers & Co. got from Z. Miller," is sufficiently definite to identify the land in controversy.

Appeal from Allen district court; OSCAR FOUST, judge. Opinion filed November 8, 1913. Affirmed.

*H. A. Ewing, S. A. Gard,* and *G. R. Gard,* all of Iola, for the appellant.

*S. W. Brewster,* and *A. S. Lapham,* both of Chanute, for the appellee; *Andrew L. Winters,* of Chicago, Ill., of counsel.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one of ejectment, involving a tract of land consisting of 476 acres lying near Humboldt in Allen county and known to the interested parties as the Humboldt farm. George Z. Work died July 27, 1905, leaving a will in which he devised his entire estate to his widow, Dorothy Work. The title to the farm appeared of record in the name of her husband and she claimed it under the will. Andrew S. Work, a brother of the de-

ceased, claimed to be the legal and equitable owner of an undivided one-half interest in the farm, and on March 2, 1909, instituted the action to enforce his rights. The court held that the plaintiff failed to sustain the allegations of his petition by sufficient proof, and rendered judgment for the defendant. The plaintiff appeals.

The second amended petition, on which the case was tried, presented the following theory of the plaintiff's rights: About the year 1876 the plaintiff and his brother, George Z. Work, formed a partnership for the purpose, among other things, of dealing in real estate, and this partnership existed until the death of George Z. Work in 1905. The partnership did business under the name of Work Brothers & Co., George Z. Work and A. S. Work, and bought and traded for real estate, which was taken for convenience in any one of the partnership names. On October 7, 1893, "the said partnership firm" traded merchandise belonging to it and taken from a store then owned and operated by the firm to Zachariah Miller for the Humboldt farm. The title was taken in the name of George Z. Work, one of the partnership names, with the understanding and agreement that each partner owned an undivided half interest. On October 30, 1903, the plaintiff and his brother settled all their partnership affairs except as to this land, the rents and profits which George Z. Work had derived from it, and some oil and gas holdings and stock. On October 30, 1903, at the time all other partnership business was settled and adjusted, George Z. Work, as evidence of such settlement and adjustment, and as evidence of the plaintiff's ownership of the land in controversy, executed and delivered to the plaintiff a certain writing which reads as follows:

"HUMBOLDT, Oct. 30, 1903.

"This is to certify that my Bro. A. S. Work owns one-half interest in all the Humboldt Oil & Gas stock

I hold in my name and that I owe him on my one-half $750.00.

"Also that he owns one-half interest in the farm known as the Humboldt Farm and Oil & Gas thereon after he pays for what money I have spent on same and as shown by my checks and books.

GEO. Z. WORK."

After George Z. Work's death this paper was found in an envelope containing his will in a private tin box which he kept in the vault of A. S. Work's office in Chicago. A copy was attached to the petition, marked "Exhibit A."

The facts were that in 1893 the firm of Work Brothers & Co. was composed of George Z. Work, A. S. Work, and Frank C. Taylor, whose interest was one-fourth. This firm traded merchandise to Miller for the Humboldt farm. The title was taken in the name of George Z. Work, who on October 25, 1893, executed to his partners the following instrument:

"WORK BROTHERS & COMPANY,<br>CHICAGO, Oct. 25, 1893.

"This is to certify that I hold title to 476 acres of land near Humboldt, Kansas, that Work Brothers & Co. got from Z. Miller in exchange for clothing, simply for convenience.          GEO. Z. WORK."

On August 5, 1895, the following writing executed by Taylor and by the plaintiff was placed on the same sheet of paper.

"The above described land transferred, sold and set over to George Z. Work for and in consideration of Nine Thousand Ninety $\frac{92}{100}$ Dollars. He is hereby authorized to deed same to anyone he may choose.

"Done this fifth day of August, A. D., 1895.

ANDREW S. WORK<br>FRANK C. TAYLOR."

In a private account book kept at the time by George Z. Work appear certain entries in his handwriting. At

the top of one of the pages is the legal description of the Humboldt farm and the following entry:

"Humboldt, Allen Co., Kansas, land, 1895. Aug. 5. Bought of Work Bros. & Co. the above described farm and agreement from W. B. & Co. in vault for 476 acres, 9090.92."

Below this entry is an account of subsequent expenditures on the farm.

Taylor left the firm of Work Brothers & Co. in 1895, and George Z. Work left it in 1901. Thereafter the firm consisted of the plaintiff and Charles L. Shattuck, who subsequently incorporated or formed a joint stock company under the name of Work Brothers Co. Bankruptcy proceedings were later instituted against this company, which were still pending at the time of George Z. Work's death.

George Z. Work's will was executed in October, 1903. The plaintiff testified that he drew it in Chicago and sent it to his brother at Humboldt, who executed it and returned it to him. The widow relates the circumstances to this effect: A draft of the will was prepared in the bedroom of herself and her husband in the Ganz hotel in Humboldt, Kan., she and her husband being present. This draft was taken to the office of an attorney in Humboldt where it was put in form and type-written. The typewritten document was then brought back to the hotel where it was approved by her, executed by her husband, and witnessed by two young men living at Humboldt. After it had been executed, the will was placed in the tin box at Chicago, which has been referred to.

On November 1, 1903, George Z. Work wrote to A. S. Work the following letter:

"Humboldt, November 1, 1903. .I have just enclosed and sent with this the shares you asked for, and also have put paper with my will in box stating what I told you. Signed, Your fond Bro. G. Z. Work."

After the burial of George Z. Work the tin box was opened in the presence of the widow, her son George R. Work, and A. S. Work. The testimony of the widow and her son was that George R. Work unlocked the box, took out an unsealed envelope containing the will and handed it to his mother. The plaintiff then said:

"Before you open this will, I want to say that you will find a paper in it, giving me half of the Humboldt farm."

The widow's testimony continued as follows:

"When my son George, as I told you, handed me this envelope containing the will, and Mr. Work interrupted by saying I would find this paper, Mr. Work also added, that he did not wish me to speak of it; mention it to anyone in any way as he had not settled with his creditors and he did n't wish them to know he had other property than that he had scheduled, and I said: 'If I am asked any questions about this paper, I shall tell the truth.' With that, he took the envelope out of my hand, turned his back to me; in a moment, turned again and gave me the envelope; I opened it; there was my husband's will just as I had seen it last; nothing added to it, nothing taken from it."

Afterwards she was informed of the contents of the paper and signed an instrument to be referred to later containing a copy of it, but she never saw the original until it was presented to her while she was giving her testimony at the trial.

The account books and business papers of the deceased were produced at the trial. Many thousands of dollars spent on the Humboldt farm were accounted for. On a tract of seventy-six acres six oil wells were drilled at a cost of more than $11,000, tank houses were built, pumps were put in, and oil was pumped and marketed. Other tracts were leased to operating companies. George Z. Work spent a considerable part of his time there for a number of years, and many pages of his books show revenues received. Yet only five items on those books were selected by the plaintiff as tending to

show that he was an equal partner in this very large financial undertaking. Three of these indicated that checks of Work Brothers & Co. amounting altogether to $412 were used in paying taxes, and the other two simply credited the plaintiff with items of $62.50 and $750 respectively.

There was evidence of statements by George Z. Work indicating that the plaintiff owned an interest in the farm and there was evidence of statements by the plaintiff that it belonged to George Z. Work. The plaintiff testified that he had somewhat to do with the farm and the development of its oil and gas resources, while persons in charge of the farm and the work done upon it testified that he had nothing to do with either. In the ten years which elapsed between the time when George Z. Work took from Taylor and the plaintiff the writing of August 5, 1895, and the time of his death, his wife received no information that the plaintiff was an equal partner in the farm and in the extensive operations connected with it. Other oral evidence was introduced by both sides in proof and disproof of the opposing claims and to assist the court in placing itself in the position of the two brothers in order that it might properly interpret their relations and conduct. It is not necessary to review this testimony. The trial court has passed upon its credibility and weight. Conflicts have been resolved in favor of the defendant, and in this appeal the judgment is regarded as resting upon the evidence favorable to her and upon the inferences favorable to her which may be drawn from the evidence.

It will be observed from the allegations of the petition summarized above that the paper represented by "Exhibit A" was not relied on as the source of the plaintiff's title. The petition was twice amended, and in choosing his ground the plaintiff committed himself to the proposition that his title originated in 1893 when goods belonging to himself and George Z. Work,

44—90 KAN.

as partners sharing equally, were traded for land which they shared equally. Dealing in land was a part of the partnership business, and this land was partnership property from the time it was acquired. The partnership continued until George Z. Work's death, but before his death he executed and delivered to the plaintiff "Exhibit A," not as a deed or will of the land or as a declaration of trust, but as a piece of evidence of a long-standing ownership.

The position thus taken became insecure when it appeared that Taylor was a member of the firm of Work Brothers & Co. when the Humboldt farm was acquired; that George Z. Work in fact severed his connection with that firm; and that its successor became involved in bankruptcy proceedings in which the plaintiff scheduled his property, but which did not affect George Z. Work. The position became untenable when it was proved that the Humboldt farm became the individual property of George Z. Work in August, 1895.

The very important sheet of paper evidencing the purchase of his partners' interests in the farm by George Z. Work was found with other business papers in a trunk belonging to him about a year and a half after his death. It was evidently overlooked when the petition was framed, and the plaintiff expressed surprise at its production at the trial. Many objections to its reception in evidence were interposed, but the signatures upon it were not disputed. All the business ventures of the two brothers were not joint. George Z. Work was not interested in the company formed by the plaintiff and Shattuck. Consequently it was possible for George Z. Work to own a tract of land by himself. On August 5, 1895, the title to the Humboldt farm stood of record in his name, and the instrument signed that day by the plaintiff and by Taylor was all that was necessary to establish his individual right to the property. Taylor went out of the firm about this time, but the firm of Work Brothers & Co., consisting

of the two brothers, continued in existence for some six years and kept books of account. The plaintiff was still solvent, and there was no occasion for covering property under the name of another. Yet George Z. Work transferred this farm to a private account upon his personal books which opens with a full memorandum of the purchase, giving the description of the farm, the name of the firm from which it was purchased, and the price, and referring to the agreement which made it his individual property.

George Z. Work's letter of November 1, 1903, is inconsistent with the charge in the petition that "Exhibit A" was executed at the time of a settlement of partnership affairs between the plaintiff and his brother and was delivered to the plaintiff at that time as his evidence of such a settlement and as his evidence of ownership of an existing interest in the farm. It makes no reference to a general settlement of partnership affairs. The language is, "what I told you." There was no evidence of any kind that such a settlement took place. If there had been such a settlement, no doubt it would have been evidenced, as the petition contemplated, by a definite writing made at the time showing the fact. "Exhibit A" was not inclosed with this letter to the plaintiff, and was not delivered to him. It was kept by George Z. Work among his own private papers, and the plaintiff admitted on the witness stand that he never saw it until the tin box was opened after his brother's death.

While it is not to be taken too literally, the statement of the plaintiff to the widow at the time the box was opened indicates that he then regarded "Exhibit A" as expressing a gift to him of the farm, and not as evidence of a property right he had enjoyed for many years.

The petition charged that the rents and profits which George Z. Work had received from the land were not accounted for in the settlement. There is no doubt

that George Z. Work received rents and profits for many years. Yet, "Exhibit A" conditions the plaintiff's right to an undivided half interest in the farm, not upon a partnership accounting as to revenues and disbursements, not upon payment of a partner's proportion of George Z. Work's advances, but upon the plaintiff's paying a sum equal to all the money which George Z. Work had spent on the farm.

No contention was made in the district court and none is made in the plaintiff's brief that "Exhibit A" was conclusive evidence of the plaintiff's claim which precluded further inquiry. It was properly regarded as the last one of a series of evidential facts, whose strength and meaning depended upon those antecedent to it.

Besides asserting title to the farm the plaintiff sought to recover on the ground that the defendant was estopped to dispute his assertion of title. He pleaded that he had a large claim against his brother at the time of his brother's death, amounting to $9000; that the widow was the executrix of her husband's will; that this claim was presented to her with the intention of proving it against the estate; that before the estate was finally closed, and in order to prevent the filing and proving of the claim against it, the widow agreed in writing that she would carry out the terms of "Exhibit A"; and that in consideration of this agreement the plaintiff relinquished presentation and proof of his $9000 claim, allowed the estate to be closed and the executrix to be discharged, and afterwards acted upon the widow's agreement, to his great detriment and loss.

The widow was the executrix of the will, and just before she was discharged by the probate court she gave the plaintiff a writing which reads as follows:

"MR. A. S. WORK, Chicago.          OCT. 8th, 1906.

"DEAR SIR: I do hereby agree to carry out the provisions of a certain declaration of trust, signed by

George Z. Work, as follows, viz: (Here follows a copy of 'Exhibit A') upon proper proof of the authenticity of said declaration and the performance of its condition.            DOROTHY WORK."

Aside from the plaintiff's own testimony that he had a claim against his brother's estate amounting to between $7900 and $9000—he had forgotten the exact amount—there is no evidence whatever to support the existence of such a claim or the good faith of its assertion. The widow testified that no such claim had ever been presented to her while she was executrix and that she never heard of it until she read about it in the plaintiff's amended petition.

Apparently the widow considered "Exhibit A," if such a paper existed, as a part of the will. She testified as follows:

"Mr. A. S. Work seemed to think I would n't carry out the provisions of the will without some memorandum on my part signifying my willingness to it, so I signed his paper with that understanding, that he, on his part, was to establish the authenticity of the signature and, further, that he was to pay me all the money that my husband had spent on his expenses since he had the farm in his possession."

Referring to this condition upon the acquisition of title by the defendant contained both in "Exhibit A" and in the widow's recognition of it, the trial court, in an opinion rendered when the decision was announced, said:

"This was recognized by plaintiff herein upon the trial of this cause, and hence, proof was offered and introduced on such trial on his part tending, as claimed by him, to show a performance by him of such conditions precedent; this was and is controverted by defendant, and she introduced evidence on the trial, on her part, tending, as claimed by her, to negative such contention of plaintiff; and hence, the testimony was permitted to and did take a wide range on such vital questions."

The final conclusion of the court is stated in the opinion as follows:

"Considering such conclusions of fact, they being either admitted by the parties, or fully established by the evidence in the cause, in connection with a careful examination and consideration of the pleadings, together with all the evidence in the cause, both oral and documentary, aided by the able and exhaustive briefs furnished me by respective counsel, I am irresistibly led to the conclusion that, under all the facts and circumstances as are disclosed from all the evidence in the cause, the plaintiff has failed to establish his contention by that measure of proof required by law in cases of the character as the one at bar; has failed to show that at the time of the commencement of this action he had any right, title, interest, property, claim or demand in or to or was legally or equitably entitled to the possession of said land or any part thereof."

Manifestly it is impossible for this court to declare that the trial court erred in its decision.

It is claimed that the court erred in excluding evidence offered on behalf of the plaintiff. In view of the clear prominence of the essential facts of the case and the thoroughness with which they were investigated at the trial most of the items of evidence referred to seem quite inconsequential. Some of them, as, for example, the participation of the plaintiff in paying the cost of the first oil well, and the relation of the farm to the assets of Work Brothers & Co. after Taylor retired from the firm, were covered by other testimony. Some of them, as, for example, "Did you ever part with your interest in the Humboldt farm," called for inferences which the court alone had the right to draw. After the defendant had introduced the writing of August 5, 1895, signed by the plaintiff and by Taylor, the plaintiff offered to testify in rebuttal that he had a writing from his brother subsequent to that date which related to the Humboldt farm but which had been lost. The plaintiff did not put his offer in a form which satisfied the court that

he was not seeking to testify to a personal transaction with his deceased brother. But besides this, neither the nature and contents of the writing, nor its date, nor the circumstances connected with it were disclosed so that its materiality might be considered, and the plaintiff refrained from pressing the subject at the hearing of the motion for a new trial. (Civ. Code, § 307.) The last observation applies to all the testimony which was rejected at the trial.

Error is also assigned on the admission in evidence of the writing of August 5, 1895. The argument is confined to the single proposition that it is too vague and indefinite to identify the property in controversy. It refers to the description contained in the writing just above it on the same sheet of paper. Construing the two instruments together, the description of the land is quite as definite as that contained in "Exhibit A."

The judgment of the district court is affirmed.

PORTER, J. (dissenting) : The instrument chiefly relied upon by the plaintiff to establish his ownership to a one-half interest in the lands in controversy reads as follows:

"Humboldt, Oct. 30, 1903. This is to certify that my Bro. A. S. Work, owns one-half interest in all the Humboldt Oil & Gas stock I hold in my name, and that I owe him on my half $750.00. Also that he owns one-half interest in the farm known as the Humboldt Farm and oil and gas thereon, after he pays for what money I have spent on same and as shown by my checks and books.                                   GEO. Z. WORK."

This paper was executed by Geo. Z. Work less than two years before his death. It was found with his last will and testament where he had agreed with his brother to leave it. His death occurred in July, 1905. In October, 1906, his widow, the defendant in this case, agreed with the plaintiff in writing that she would

carry out the provisions of this declaration of trust signed by her husband, "upon proper proof of the authenticity of said declaration and the performance of its conditions." Plaintiff in his petition relied not only upon the declaration of trust but upon her agreement to be bound thereby, and also alleged and sought to prove estoppel on her part. Conceding that there was no consideration for her agreement to carry out the provisions of the declaration of trust, and that no estoppel was shown, the finding of the trial court is in favor of the authenticity of this declaration of trust. The trial court, however, construed it, in effect, as granting nothing more than a mere option to plaintiff to acquire a half interest in the real estate upon the payment of the moneys advanced by Geo. Z. Work. I think there can be no question that it is a declaration that the legal title to the land was held by Geo. Z. Work in trust for himself and the plaintiff. It is just the same as if he had said, "My brother owns a half interest in the farm, but owes me for certain moneys I have spent on the same as shown by my checks and books." Just as in the preceding sentence he had stated that they were equally interested in certain oil and gas stock held in his name, but that he owed on his half, to the plaintiff, certain moneys. This construction is borne out by all the facts and circumstances in evidence as to the course of business and dealings between the brothers. The evidence shows and the court finds that the relations between the brothers were at all times friendly and affectionate. The trial court I think erred in holding that there was any burden upon the plaintiff to show such acts and conduct on the part of his brother as would operate to vest an undivided one-half interest in the lands of the plaintiff. The declaration of trust and the evidence shows that Geo. Z. Work held the legal title in trust, and that the plaintiff in fact owned a half interest in the land. It was

therefore not necessary for the plaintiff to show acts and conduct on the part of Geo. Z. Work alone, or in conjunction with Dorothy Work during the lifetime of her husband, or since, operating to vest a half interest in the plaintiff. The evidence satisfies me that the plaintiff owned and his brother recognized his owner-ship to a half interest in these lands from the time that the former partner's interest was eliminated. If that is true, Dorothy Work never acquired a wife's interest in the undivided half belonging to the plaintiff.

The question before us is not whether the plaintiff acted in good faith in threatening to file a claim against his brother's estate arising out of other transactions, nor whether he waived any such claim in considera-tion of the agreement of Dorothy Work to be bound by the declaration of trust, nor whether he alleged es-toppel and failed to establish it. We are called upon to construe a written instrument, which to my mind is not at all ambiguous, but the meaning of which, if there were any ambiguity, the evidence makes clear. The plaintiff should not be deprived of his interest in the real estate on any such considerations as that all his claims in the lower court were not established.

I am authorized to state that BENSON, J., and WEST, J., concur in this dissent.