No. 24,725.

THE STATE OF KANSAS, ex rel. JOSEPH A. FULLER, County Attorney of Greenwood County, *Appellee,* v. ALONZO M. STILLWELL, *Appellant.*

SYLLABUS BY THE COURT.

1. ACTION TO ABATE A COMMON NUISANCE—*Dog Farm.* The maintenance of howling, barking and whining dogs on premises, kept in an unsanitary condition, to the continuous annoyance and discomfort of surrounding neighbors so that their rest is broken, sleep interrupted, and their reasonable use and enjoyment of their property disturbed, is a nuisance subject to be enjoined.

2. SAME—*Petition States a Cause of Action.* The petition examined and held to state facts sufficient to state a cause of action.

3. SAME—*Evidence Supports a Judgment Abating a Dog Farm.* The evidence examined and found sufficient to support a judgment abating and enjoining the maintenance of a dog farm.

Appeal from Greenwood district court; ALLISON T. AYRES, judge. Opinion filed December 8, 1923. Affirmed.

*James G. Sheppard,* and *Charles F. Newman,* both of Fort Scott, for the appellant.

*C. B. Griffith,* attorney-general, *J. F. Darby,* and *Joseph A. Fuller,* both of Eureka, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to abate a nuisance. The plaintiff prevailed and the defendant appeals.

The defendant has maintained a dog farm on a tract of 2½ acres

of land in close proximity to the city of Eureka. His premises were in the near vicinity of the Greenwood county infirmary where there were a number of aged and infirm patients. Between thirty and forty families also resided in the vicinity, most of whom complained of the unsanitary condition in which the premises were kept, and the barking of the dogs. From a small beginning, in 1904, the farm grew until it numbered from twenty-five to fifty grown dogs.

There are two principal specifications of error urged by the defendant: that the petition failed to state facts sufficient to constitute a cause of action; and that the evidence was not sufficient to support the judgment.

It is not necessary to set out a copy of the petition. It is sufficient to say that it contained all the essential allegations requisite to state a cause of action.

In considering defendant's second specifications of error, reference to the testimony of a few witnesses will suffice. The county health officer, among other things, testified:

"I visited the Stillwell property; found a large pile of bones, judge two wagon-loads, foul smelling. I ordered them sprinkled with lime. I visited the place again and found some odor still and asked him to bury them and dispose of them as soon as possible. I visited the place again and ordered the bones removed. Part of the bones were green and foul smelling. They were decaying bones. I told him to keep them gathered up every day. When I made the investigation the place was very unsanitary. There was quite a foul smell there the first time and there was an unsanitary smell the last time. I noticed one or two dead dogs in the barn and one sick dog. It was good as dead, and it was foul smelling. I think he said it had distemper."

Another witness testified:

"I own two and one-half acres adjoining on the east and south sides of the Stillwell property; have owned the property for nineteen and one-half years. I lived on the property before Stillwell engaged in the dog business. It has been kept very unsanitary. He carries bones and offal from the butcher shops and the slops from the hotels and feeds the bones on the ground to the dogs, and they are allowed to accumulate there for probably two years, without being removed, piled up in a lot back of his barn, and since this case was brought, he has fed the dogs back in the barn that was in the lot, and the dogs east of the barn that were in the lot that goes up to my house. He keeps different numbers of dogs. He sells dogs and has lost a great many with the dog distemper. I have seen some dead dogs around there. I have seen dead dogs on the south part of my place a number of times, mostly puppies. I have seen them over on the railroad right-of-way. The odor was awful bad for people that lived close to it, and had to be there to eat each day. . . . One of Mr. Stillwell's lots that the dogs are in comes right to my house, twelve or thirteen feet from my house. Nine dogs have been kept and fed in this lot for some

time now. The dogs used to be very bad about jumping up on the fence and biting people next to my house. One of them bit my wife and tore her dress. The dogs bark, howl and whine a great deal; the howling annoys me a great deal the most. . . . I have seen the dogs mating in the yard and have seen .them fight, too, and nearly kill each other. It makes me extremely nervous when the dogs howl. Makes me nervous the next day after they have those howling spells. I have been engaged in the real-estate business several years. I don't think you could find anybody that would want to purchase any property there now. I have tried hard to sell my place to Mr. Ballard, and he said he wouldn't buy my place on account of being so close to the dogs."

Another witness testified:.

"I live about one-half block straight across from the Stillwell place. I go by there quite a bit. . . . During this past summer the pens sure did smell. I have missed lots of good breakfasts when the wind happened to be in the north. We have lived there a year last June and just got there in time to get the best smells, and this summer we got some more.

"Q. Did any noise come from that place of business over there? A. Sounded like they was having a concert and all trying to fight to be leader. . . . Wake me up three or four times in the night. Three hours out of every night, anyway. . . . It has continued a good deal of the time since we have lived there.

"CROSS-EXAMINATION.

"Q. How much property do you have there? A. We have got about a half a block, I guess.

"Q. What did you pay for it? A. $1,200.

"Q. You are not offering to sell it? A. I don't think we could give it away."

The quoting of further testimony is neither necessary nor profitable. The plaintiff states in its brief that "Every neighbor within four or five blocks was in court to testify that he was grievously annoyed, disturbed and kept awake by barking, howling and whining dogs." The trial court observed the witnesses on the stand. He heard their testimony. He personally visited defendant's premises and observed conditions. Who is better qualified to pass upon the facts? The principle is well settled that the determination of issuable facts is a matter for the trial court. If there is sufficient evidence on which to base the judgment it will not be disturbed on appeal. (*Winstead v. Standeford,* 21 Kan. 270; *Mason v. Harlow,* 91 Kan. 807, 139 Pac. 384; *McCullagh v. Stone,* 86 Kan. 265, 119 Pac. 874; *Work v. Work,* 90 Kan. 683, 136 Pac. 236; *Kuhn v. Johnson,* 91 Kan. 188, 137 Pac. 990; *Brescheisen v. Clark,* 103 Kan. 662, 176 Pac. 137.) The evidence here was abundant to support the judgment. The keeping of the dogs on defendant's premises, under the circumstances, and according to the authorities, constituted a nuisance.

In *Bailey v. Kelly*, 93 Kan. 723, 727, 145 Pac. 556, it was said:

"Broadly speaking, 'nuisance, *nocumentum*, or annoyance, signifies anything that worketh hurt, inconvenience or damage.' [Blackstone's Commentaries, ch. 13, p. 216.] But in legal phraseology the term is applied to that class of wrongs that arises 'from the unreasonable, unwarrantable or unlawful use by a person of his own property . . . producing such material annoyance, inconvenience, discomfort or hurt, that the law will presume a consequent damage.' [1 Wood on Nuisances, 3d ed., §.1.] Unless prejudice or damage threaten or result as a necessary consequence of the act done·there is no nuisance. 'It is a nuisance . . . to do any act therein that in its consequences must necessarily tend to the prejudice of one's neighbors.' [Blackstone's Commentaries, ch. 13, p. 218.] 'In order to create a nuisance from the use of property a material, substantial and appreciable injury must be occasioned to the person or property of another.' [Joyce, Law of Nuisances, § 22.] 'Injury and damage must concur as results of an act or thing in order to make it a nuisance.' [1 Wood on Nuisances, 3d ed., § 5.]"

The constant barking, howling and whining of dogs may be a nuisance. (29 Cyc. 1166 and cases cited.)

In 20 R. C. L. 413, it is said:

"In another connection it has been noted that animals may and frequently do constitute a nuisance, and that their offensive character may consist in noises, odors, danger of injury, communication of disease, or the shock to the moral sensibilities produced by witnessing them in the act of copulation. All animals, of course are not subject to objection but the category is large, having been held to embrace hogs, dogs, asses, horses, cattle, fowls, and even bees."

In 29 Cyc. 1190 this language is used:

"The injury or annoyance which will warrant relief against an alleged nuisance, must be of a real and substantial character, and such as impairs the ordinary enjoyment, physically, of the property, within its sphere; . . . The question in all cases is whether the annoyance produced is such as to materially interfere with the ordinary comfort of human existence. It is not, of course, necessary that the annoyance and discomfort should be so great as to actually drive the person complaining thereof from his dwelling; but if the alleged injury be a plain interference with ordinary comforts and enjoyment, there is a nuisance, no matter how slight the damage, provided the inconvenience be actual and not fanciful."

In *Herring v. Wilton*, 106 Va. 171, it was said that—

"The maintenance of howling and barking dogs and whining puppies on neighboring premises, to the great and continuous annoyance and discomfort of a property holder and his family, so that their rest is broken, sleep interrupted, and their reasonable use and enjoyment of their home disturbed, is a nuisance subject to be enjoined."

In *Kansas City v. Serum Co.*, 87 Kan. 786, 789, 125 Pac. 70, it was said:

"The underlying doctrine of the law of nuisance is that one shall not be permitted to use his own property so as to injure another."

In 21 A. & E. Ency. of L. 682, it is said:

"A nuisance is literally an annoyance, and signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom."

In *Acme Fertilizer Co. v. State*, 34 Ind. App. 346, 107 Am. St. Rep. 190, it was said:

"Anything which is an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life and property by an entire community or neighborhood, or any considerable number of persons is a public nuisance." (See, also, *City of Burlington v. Stockwell*, 5 Kan. App. 569; *Winbigler v. Clift,* 102 Kan. 858, 172 Pac. 537; Note, 107 Am. St. Rep. 195.)

The judgment is affirmed.