Presiding Judge Scott
delivered the opinion of the court.
This was a suit by the appellee to enjoin the appellant from establishing and maintaining a hog ranch, wherein garbage and offal was alleged to be used as feed for the swine.
The plaintiff owned a farm of forty acres upon which he'had lived with his family for about twenty-five years. The defendant had purchased land adjoining that of the plaintiff and was about to establish a hog ranch thereon, the pens having been constructed near plaintiff’s dwelling, for that purpose, but at the time of the suit the business was not as yet established on the particular premises, but defendant was conducting a hog ranch at another place, and had so conducted it for several years.
It was alleged in the complaint that the defendant proposed to establish upon the premises adjoining that of the plaintiff, such a business as was filthy, detrimental to health, offensive to the senses *191 and sucli as would depreciate tlie value of the property of the plaintiff and render his dwelling uninhabitable. That it was the custom of defendant to feed his swine garbage, offal and filth hauled from the city of Denver, and that such feeding created a nauseating and offensive odor detrimental to health, and a continuing nuisance. That the defendant further proposed to feed his swine dead animals and other noisome and unhealthy substances, from which the feeding swine frequently die, and the dead carcasses are left to lie on the ground and decay. It was further alleged that the business so sought to be maintained by the defendant, is so unwholesome, so injurious to health, and so detrimental to the comfort and safety to himself and family, and the public at large, that plaintiff can recover no adequate compensation, and has no adequate remedy at law. Further, that defendant had not procured a license from the county board of health as is required by law.
The answer admitted the purpose of the defendant to establish and maintain a hog ranch, but denied that his business as then conducted, or intended to be conducted on the premises in question, is unwholesome, injurious to health, or detrimental to plaintiff or the public, and denied that the business of maintaining a hog ranch is universally recognized as unwholesome or offensive if properly maintained.
The defendant admitted that he had no license from the county board, but declared that he had an application for such license pending.
He further alleged that he had invested twenty thousand dollars in the purchase of the premises *192 and that the same was of but little value for any other purpose. The order of the court was that the defendant and those acting by, through and under him, be forever restrained and enjoined from operating, maintaining or attempting to operate or maintain, a hog ranch for the feeding of garbage and offal to swine, upon the premises involved, in such manner as will be offensive to the plaintiff..
From this judgment the defendant appealed, but the appellee has not filed a brief in the case, or in any wise attempted to assist this court in a determination of the matter here.
The errors complained of are (a) the admission of testimony concerning conditions upon other hog ranches in the vicinity where garbage and offal were fed to swine and the effect and results thereof, (b) That inasmuch as the proposed offensive business was not then in actual operation the defendant cannot be enjoined from putting it into operation.
The defendant testified that he proposed to sterilize the garbage, but that although he had fed garbage and meat for some years, from the city, and from slaughter houses, he had not sterilized the same, and was not quite clear as to what the process was or should be. The court refers to this testimony in the following excerpt from his findings :
“There is- no doubt, in the court’s mind, that this community, in which the hog ranch is contemplated is a farming community, and is outside of the district known as the ‘hog ranch district.’ There is no doubt in the court’s mind, either, that the feed-, ing of garbage to hogs, as alleged in the complaint. *193 will constitute a nuisance, and such, a nuisance as this court should enjoin. I am inclined to believe from the evidence of the defendant himself that when he bought this place and started in to improve it with the idea of conducting a hog ranch there, he had no intention of sterilizing, or conducting his hog ranch, in any manner different from the conduct of the previous place that he had operated, and is now operating. I think, perhaps it is true that when' he found there was some objection, that he was satisfied to try the other method, with the idea, perhaps, of making a lesser nuisance, and do away with the disagreeable features. It is on this point of the case that I am in doubt — as to whether such treatment, as the defendant has said he proposes to use, will actually do away with the objectionable features of the hog ranch.
I am of the opinion -that the defendant should be restrained and enjoined from conducting this ranch unless he so treats his garbage that none of the disagreeable odors and features of feeding garbage will be experienced by the plaintiff; and an injunction will issue so restraining him.”
The gravamen of the offense charged was not in the keeping and maintaining of a hog ranch, for the raising of hogs may be said to be both necessary and lawful, but in the proposal to keep and maintain a place where the swine were to be fed garbage, offal and dead animals, alleged tó be offensive, unhealthy and dangerous.
It. was necessary, therefore, for the court to-hear testimony concerning the nature and character of such feed, as well as the resulting effects when fed to swine, upon a ranch of the kind so pro *194 posed to be established, in order to determine the very question at issue in the case. The court did not err in this particular.
The testimony discloses a condition in this regard so repulsive and so inimical to the public health as to prompt the inquiry, as to how in a civilized community, such things are permitted to exist and why the offenders are not both restrained and criminally prosecuted.
It would seem to be a fruitful field for health boards and prosecuting officers.
The garbage so fed, and as complained of here, is described by witnesses, as filth of the most offensive kind. “Rotten refuse, put out in garbage cans, rotten meat, offal from the slaughter houses and stuff from hospitals, rags and poultices. Many of the hogs so fed die from disease. I have seen them lie on the ground and other pigs feed upon their dead bodies. This is the condition at the place where defendant is now conducting his business. Other hog ranches are similar. ’ ’
Witness Alexander, a physician, had visited several of these hog ranches where garbage was fed, and found garbage to consist of table scraps, more or less offal, intestines, livers, and some dead calves, meat with maggots in it, etc. Can see where disease may be contracted from such garbage, such as typhus and typhoid fever, scarlet fever, probably malaria fever. It may be carried from these places by the house fly. The place of defendant was in this condition and he had about five hundred hogs.
Witness Campbell testified that at defendant’s present ranch, he saw conditions as above described, counted eleven dead calves, partly eaten, paunches *195 of cows, and entrails. Had seen these hog ranches when the ground was alive with maggots so that it seemed almost to move. The odor was offensive at a distance of half a mile. Many other witnesses testified to the same effect as those referred to.
It will he observed that the defendant was not restrained from maintaining a hog ranch, but rather from feeding garbage, offal and other substances, which produce the condition as appears from the testimony in the ease.
Then may the court enjoin the establishment and maintenance of such a place when he believes from the evidence that such is the purpose, though where a plan of sterilization is proposed, but which the court is not satisfied will prevent the evil effects.
It will be observed that the court judicially determined upon a hearing’, that the kind of business enjoined, that is to say the feeding of garbage and offal to hogs in the manner complained of was a nuisance, and such a nuisance as should be enjoined and therefore the question presented by counsel as to whether or not it is a nuisance per se, is not involved.
A nuisance may be at the same time both a public and private nuisance, and the case at bar is a very clear example. Such a nuisance may he proceeded against either by indictment or by the individual specially annoyed, by injunction or in an action for damage. City of Denver v. Mullen et al., 7 Colo., 345.
But counsel contend that inasmuch as the nuisance in this case was not in actual existence, but at *196 most only contemplated and threatened, the court erred in granting the injunction.
Counsel cites many cases in support of the general rule laid down in 14 Ene: P. & P., 1128.
“That where the thing complained of is not a nuisance per se, hut may or may not become so according to circumstances, and .the injury apprehended is eventual or contingent, equity will not interfere. The presumption is that a person entering into a legitimate business will conduct it in a proper way, so that it will not constitute a nuisance; and so, where a building in course of erection, or about to be erected, will not of itself constitute a nuisance, equity will not enjoin it on the ground that-it may be used for a purpose which will make it a nuisance. If the building is in fact used in such a manner as to create a nuisance, its use for such purpose will then be enjoinel.”
But in the same work and as a qualification of the doctrine there stated, it is said:
“However, an equity court may in proper cases grant preventative as well as remedial relief, and where a threatened act must, from its character, necessarily result in a nuisance, equity will interfere by injunction.”
This rule is supported by Mr. Wood in his work on the Law of Nuisances, sec. 788, where it is said:
“Ah injunction will be issued to prevent the creation of a nuisance, as well as to stop a nuisance already created, but in such case the character of the nuisance must be particularly set forth in the bill, as well as the character of the injury that will result therefrom. ’ ’
*197 These requirements seem to have been fully met both in the allegations and in the proof in this case, and there can be no doubt as to the injurious results of the threatened nuisance. In considering this subject the supreme court of Indiana said:
“In a proper case an injunction will lie to prevent the use of property for operating a business which is a nuisance per se, and even to be used for a business not a nuisance per se, if threatened and intended to be conducted in an improper manner, so as to constitute a nuisance. An injunction will lie to prevent a nuisance threatened and in progress, as well as to abate one already in existence.” 117 Ind., 260, 261.
Wahle v. Reinback, 76 Ill., 322, was an action to enjoin the erection of a privy upon adjoining premises and the court there said:
“Manifestly no remedy in an action at law would be adequate in a case like the present. Upon what basis could the damages be estimated for the sickness or discomfort caused by inhaling the unwholesome vapors, drinking the impure water, and enduring the foul stenches originating from a structure of the description and relative location complained of? And to say that such a nuisance must be suffered to be created and continued until its character shall be formally determined at law, would seem to be but little better than a mockery of justice to him whose residence is affected by it. "We are of the opinion that the case is clearly one in which there is no adequate remedy at law, and where the injury is, in its nature, irreparable.”-
The case of Cleveland v. Citizens Gas Co., 20 N. J. Eq., 201, was a case similar in many respects *198 to tlxe one at bar so fax’ as the principles involved are concerned, and in that case the injunction granted was likewise lixnited to injurious process that might be used. That was an action to restrain the erection of a gas plant in the neighborhood of certain dwelling houses.
The bill alleged “That the building and working of the gas works so near their houses, will greatly injure their value, and render them unfit for residences. That gas works always and necessarily send forth noisome and unpleasant vapors and smoke which are diffused to axx extent greater than the distance to these houses, which will render living in them uncomfortable and unhealthy.”
The answer was of sixnilar import in that case to the one at bar, in that it denied that under the process proposed to be used the odor would be offensive or injurious. Specifically the answer recited :
“The defendants deny that the manufacture of gas in the manner ixi which they intend to conduct it, will be a nuisance to the complainants’ houses, or will render life in them uncomfortable. They answer that they do not intend to use the process of purifying the gas with lime, which is the cause of the most objectionable odor arising from gas works, and will substitute for it the process by oxide of iron, which is comparatively inoffensive. They also intend to construct a cistern under ground, into which the tar and axnmoniacal liquors and other offensive fluid products, will be conveyed by gas tight pipes, and from which they will be discharged by pipes into boats, which will convey them away.”
The court expressed some doubt in that case *199 as in tlie one at bar, as to whether or not the proposed process would remedy the evil, but while declining to enjoin the erection of the plant and warning the defendant as to the risk it took in this erection of the plant, should it prove to be offensive as was contended in the complaint ruled:
"An injunction must issue to restrain the defendant, the gas company, from using what is known as the lime process in purifying their gas, or any process of which lime is a substantial part; and from manufacturing gas in any way that will produce any annoyance to persons dwelling in the houses of the complainants, by any smoke, gases, other effluvia or odors, that may issue from the works. The residue of the injunction is refused.”
This is about what the court did in the case at bar and finds an apparently sound precedent in the case just cited.
The right to enjoin a threatened nuisance seem to be well stated in Miley v. A’Hearn (Ky.), 18 S. W., 530, where it is said:
"A party is not required, however, to wait until the injury is inflicted. The object of the writ is preventive. Like the interdict of the civil law, it wards off the injury. It is true, it cannot be called into exercise unless the right of the party invoking it be certain, and a necessity exists for its aid. In other words, the case must be a clear one. But this does not mean that there must be an absolute certainty of its need. If so, it could rarely be invoked. It is true, the party cannot act upon a mere fear or apprehension, a mere possibility or theoretical injury; but, if the danger be probable and threatening lie may invoke its aid, and need not delay until *200 the injury is actually inflicted. If this were required, the effectiveness of the writ would be destroyed. There must be good ground to apprehend injury of such a character that, if it be inflicted, adequate compensation will be impossible. The writ must be applied with care; but, if the danger be threatening, and likely to ensue, as it seems to us is the case here, it may properly be resorted to, and without it equity would in large measure be without the power to perform its office.”
Under the circumstances of this case where the injury threatened was of so grave a character as to destroy the comfort and endanger the health of the plaintiff’s family, as well as of the community, we feel that the court was fully justified in entering the order made. Particularly where it appears that the defendant was at the time, and had been for years, prior thereto, maintaining the very character of nuisance complained of and in the same vicinity.
The order of the court should be modified in that the language “In such manner as will be offensive to the plaintiff” should be changed to the words “in such manner as will not be .offensive or dangerous to the health of the plaintiff and the' public. ’ ’
The determination of this question should not be left to the plaintiff alone.
With instructions to so modify the order, the judgment is affirmed.
All the judges concurring.