No. 12,291.

KREBS *v.* HERMANN ET AL.

(6 P. [2d] 907)

Decided November 30, 1931. Rehearing denied December 28, 1931.

Messrs. Ponsford, Pender & Larwill, for plaintiff in error.

Mr. James J. Sullivan, for defendants in error.

*En Banc.*

Mr. Justice Campbell delivered the opinion of the court.

Plaintiff Krebs is the owner of plot 4, Lincoln Manor, in Adams county, platted but not incorporated territory, on which he has erected a small garage, filling station and a brick building. These structures are on the northwest corner of West 55th avenue and Federal boulevard, 3 or 4 blocks north of the north boundary line of the City and County of Denver. On these platted plots a considerable number of small suburban homes have been erected, most of the occupants of which are those whose work or employment is in the city. In his brick building the plaintiff conducts in the front part a small store; in the rear of which are the living quarters for himself, his wife and three children. Directly across from plaintiff's building and on the southwest corner of West 55th avenue and the boulevard, on plot 5, the defendants have a 7-room brick house in the rear of which are a series of dog kennels having accommodations for 93 dogs, each in a separate kennel. Dr. Hermann, one of the defendants, is a veterinary surgeon and receives dogs at these kennels to be boarded and cared for. The defendants do not live in the dwelling house on these premises. It is occupied by their tenant who has charge of the kennels. Dr. Hermann buys and sells dogs and conducts on the premises a dog hospital where sick and injured dogs are cared for. The tract of ground on which the kennels and the residence are built front east on Federal boulevard and the north boundary line is the south line of West 55th avenue. The kennels and dog pens extend to within a few

feet of this south line. The distance between the plaintiff's living quarters and these open air pens on the north side of these brick kennels is about 45 feet.

The object of the present action by Krebs is to obtain an injunction restraining the defendants from further keeping and operating these kennels or boarding and treating dogs, on the ground that the same, as to him, constitute a nuisance as the business has hitherto been, and is now being, conducted.

The trial court, upon evidence in some particulars in conflict, held that the business as conducted by the defendants does not constitute a nuisance as to the plaintiff and thereupon entered an order dismissing the action, which the plaintiff upon this writ of error is seeking to have set aside.

The trial judge delivered and filed his opinion which is incorporated in the record proper. Therein he says that it is disputed as to whether the kennels were built by the defendants before the plaintiff erected his buildings. The court, however, immediately added that it is immaterial in this case which one of the parties first erected his buildings. The undisputed fact is that the plaintiff bought his land, even if he did not begin the construction of his buildings, before the defendants acquired their premises. The testimony of both parties is that they were building their respective properties at the same time. The trial court was right in its view that it is no defense in an action of this kind that a building, in which a nuisance is being carried on to the injury of the owner of another building, was constructed before the erection of the building of the complaining owner. The law does not give to the owner of a building the right to maintain a nuisance in it merely because he constructed the same before another building was constructed and later occupied by persons who have been injured by a nuisance conducted in the building first erected. 20 R. C. L. p. 495, §110. The text cites to this proposition *Oehler v. Levy*, 234 Ill. 595, 85 N. E. 271, 17 L. R. A. (N. S.)

1025. The author summarizes the doctrine of the case in the statement that an owner of real estate may enjoin the maintenance of a nuisance upon adjoining property, although it existed at the time he purchased his property.

In the opinion of the trial court it is stated that plaintiff "has practically abandoned any claim to have the property of the defendants abated on account of danger to health, either to himself or his family, or to any unlawful management of the premises, and has given up all contention except that the noise from the barking dogs has so worked on his nerves as to have interfered with his peace of mind and the peace and quiet of his family." The plaintiff vigorously denies this assertion. We have examined the record with care and find no ground for this statement of the trial court. Plaintiff asserts now, as he did at the trial, that, although the defendants have taken certain steps and made certain changes in the kennels and the premises on which they are built, which may in the future prevent the recurrence of some of the disagreeable odors, nevertheless plaintiff says that if the defendants continue to conduct the business of caring for dogs there will unavoidably arise disagreeable odors which will cause annoyance and discomfort to the plaintiff and his family in their home.

Before considering the merits it is well to repeat the statement that the action is not one to abate a public nuisance. Its only object is to secure a decree of abatement because of a private nuisance created and maintained by the defendants to the injury of the plaintiff. The testimony took a wide range, apparently without objection by either party. A large number of witnesses, both for plaintiff and defendants, gave testimony upon the supposed issue of a public nuisance. About half of them testified to facts which, if they had received the sanction of the trial court, would have justified a decree of abatement. The other half testified to facts which, if the court had given its sanction thereto, would have justified a decree for the defendants. The only issue, how-

ever, which we shall consider, is whether or not the evidence bearing upon the issue of a private nuisance of the defendants, entitles plaintiff to relief, and the sole question for decision upon this review is: Did the trial court commit error in dismissing the action upon the ground that the evidence was insufficient to establish the allegations of the complaint concerning a private nuisance? In his written opinion the judge said that the maintenance of the kennels was not of such a character as to be disturbing to a person of ordinary sensibilities. He further said, in effect, that plaintiff's appearance on the witness stand indicated that he was of a nervous temperament, and of more than ordinary sensibilities, and unusually disturbed by the barking of dogs, and, therefore, the court held that he was not within the protection of the law that affords relief in such cases only to those of normal sensibilities. But the trial court overlooked, or failed to appreciate the fact that plaintiff's testimony, which is not disputed, is that his state of mind and physical condition, as they appeared to be to the trial court, were occasioned by the offensive odors and unusual noises that came from defendants' adjacent premises. Moreover, the allegations of the complaint are, and the evidence shows, that the maintenance of the defendants' kennels caused unnecessary annoyance and discomfort not only to the plaintiff, but to his wife and three children. There is no evidence whatever that either the wife or the children are not persons of ordinary sensibilities. Plaintiff would be entitled to recover, if in other respects his evidence was sufficient, even though he, himself, was not a man of ordinary sensibilities, if the wife and children come within that description. As further showing the lack of appreciation by the trial court of the effect of the evidence as a whole, the trial judge in his opinion said: "The barking of a dog ought not to disturb an ordinary person. That is a common sound heard in every community. To some ears the barking of a dog, especially on the person's own premises, is a sound that

is pleasing, and one which tends to make him feel secure.'' Counsel for the defendants in his brief here, in discussing this subject, refers to the eulogy of the late Senator Vest of Missouri upon a dog. The Senator, however, was speaking only of one dog and not of a collection of 40 or 90 dogs, all of whom were continuously howling and yelping at the same time under his window in the night time while he was unsuccessfully trying to sleep and get repose of body and mind. If the Senator had been in his home, trying to obtain sleep and the chorus of 40 to 90 dogs had been continuously howling and yelping under his window, we might conjecture, although we do not attempt to state, the blistering language which he probably would have employed because of his inability to sleep.

The testimony is undisputed that, although in the winter season the defendants keep in these kennels ordinarily from 30 to 40 dogs, in the summer season the number has been 90 and averages from 40 to 80 dogs. These kennels border upon a much traveled street, Federal boulevard, a highway of the United States and also a Colorado highway, which is the principal route of travel leading north from the city of Denver to such municipalities as Boulder, Longmont, Loveland, Berthoud, Fort Collins and other places in northern Colorado, and extends from north to south throughout the entire city of Denver. It is one of the most frequently traveled highways in the state. The evidence is uncontradicted, and was elicited from a number of witnesses, including the plaintiff, that in summer the dogs in the kennels are frequently, and at all times during the night, disturbed or aroused by the passing of automobiles along Federal boulevard and what travel there is on West 55th avenue, and any unusual sound caused by the vehicles attracts their attention and one or more of them will start howling and barking and yelping and all of the dogs will join in the chorus and keep it up indefinitely. There is no testimony tending to overthrow the claim of plaintiff and

his family that they are unable to sleep, and their rest and repose disturbed to such an extent that it makes them nervous and irritable, destroys their enjoyment of life and deprives them of the proper use and enjoyment of their property as a home. Notwithstanding the opinion of the trial court that the maintenance of the nuisance was not detrimental to the health or comfort of the plaintiff and his family, or an injury to his property because he, himself, was not a person of normal sensibilities, we are of the opinion, upon the uncontradicted evidence, and no argument is necessary to establish the fact, that any person of ordinary sensibilities, when he is trying to sleep, would be disturbed and annoyed by the barking of this collection of dogs at all times during the hours usually set apart by civilized people for sleep and repose. The decree of dismissal was avowedly entered, not because the evidence was insufficient to prove that any person of normal sensibilities would be disturbed by the noises and offensive odors emanating from these dog kennels, but because, in the view of the court, the plaintiff himself was not a man of normal sensibilities. That, however, we have already seen does not justify the order of the court dismissing the action, and this is so because the plaintiff's wife and children were so disturbed, and the plaintiff is entitled to relief for that reason. Moreover, the undisputed testimony is that even if plaintiff himself is now nervous and of more than ordinary sensibilities, such conditions are due to the offensive odors and the continuous noises coming from defendants' premises. It would be strange, indeed, if the law will permit defendants to escape liability because plaintiff is now nervous and sensitive, when such conditions of mind and body were caused by their unlawful acts and conduct.

In 2 Wood on Nuisances (3d Ed.), p. 828, et seq., is cited *Dargan v. Waddill,* 31 N. C. (9 Ired.) 244, 49 Am. Dec. 421. It was an action against the defendant for injuries resulting from the noise made by defendant's horses by stamping at night in a livery stable, situate

near the plaintiff's dwelling. A verdict was rendered for the plaintiff, which was upheld by the court on appeal. In *Bishop v. Banks,* 33 Conn. 121, 87 Am. Dec. 197, it was held that the bleating of calves and other animals at night in the cattle pen of the defendant near the plaintiff's dwelling house, by reason of which his family was disturbed and broken of its rest, was actionable as a nuisance. In 46 C. J., p. 682, §58, the author says: "The disturbance of repose and deprivation of rest by acts done or occupations carried on at unreasonable hours or in an unreasonable manner is an injury for which relief may be granted." See also *Davis v. Sawyer,* 133 Mass. 289, 43 Am. Rep. 519; 46 C. J., p. 683, et seq. and cases cited in notes 62, 63.

We are not without authority in Colorado in support of plaintiff's case. In *Seigle v. Bromley,* 22 Colo. App. 189, 124 Pac. 191, our Court of Appeals, in an opinion by Presiding Judge Scott, it was held that though the keeping of swine is a lawful business, yet to maintain a place where hogs are fed upon offensive garbage and which is conducted in such a manner as not only to be offensive, but probably to occasion disease, is both a public and private nuisance.

A case almost "on all fours" with the one under consideration is *State v. Stillwell,* 114 Kan. 808, 220 Pac. 1058. The defendant had maintained a dog farm on a small tract of land in close proximity to a city. Just as here, a number of families were residing in the vicinity of defendant's premises. The court held that: "The maintenance of howling and barking dogs and whining puppies on neighboring premises, to the great and continuous annoyance and discomfort of a property holder and his family, so that their rest is broken, sleep interrupted, and their reasonable use and enjoyment of their home disturbed, is a nuisance subject to be enjoined." The opinion cites with approval *Herring v. Wilton,* 106 Va. 171, 55 S. E. 546, 7 L. R. A. (N. S.), 349, in which the language above quoted appears.

The trial court on the evidence before it should not have dismissed the action. As already stated, the defendants have effected changes in the manner of conducting their business which to some extent, at least, may, if continued, put a stop to the disturbances to the plaintiff and his family from the offensive odors and smells which arise from these kennels. The testimony, however, is uncontradicted that complete success has not attended their efforts. The testimony of disinterested and competent health officers, both of the state of Colorado and of the city of Denver, is that the kennels are models of their kind and are clean and well ventilated. There is no evidence to the contrary, but, in the very nature of things, offensive smells and odors arise therefrom. In the beginning of their business it was the custom of the defendants to spread upon the surface of their grounds adjacent to the kennels the contents of a cesspool, and the odors therefrom Dr. Hermann, himself, said were so obnoxious and offensive that defendants have discontinued the same. These offensive odors and smells, however, did not arise solely from spreading of the contents of the cesspool. The excreta from the dogs in these kennels give rise to offensive odors. The defendants still spread these excreta upon their garden at the rear of their residence property and the testimony is uncontradicted that offensive odors still arise therefrom to the annoyance and discomfort of the plaintiff and his family, and one of the health officers called by the defendants said that such odors are more offensive and injurious to human beings than are odors of excreta from horses and cattle.

■ Finally, we deem it fitting to refer to the argument of counsel for defendants that a great financial loss to them will result, if the injunctive relief sought is granted, for, says counsel, the defendants have invested about $27,000 in their business, while plaintiff's investment in his plant is about $9,000. Hence it would be a greater hardship on the defendants and a more serious financial loss to them if the injunctive relief is given than

would ensue to plaintiff, if such relief is withheld. Such arguments have not infrequently been made in cases of this character, but the courts reject them as unsound. In some cases consideration has been given to such facts upon preliminary or interlocutory applications, but not upon final hearing. We are not without authority upon this subject in this jurisdiction. In *Suffolk G. M. & M. Co. v. Mining Co.*, 9 Colo. App. 407, 48 Pac. 828, our Court of Appeals, at page 419, says: "The question of balance of injury may possibly be right, and the court may have a right to consider it on an interlocutory application; but we know of no principle by which equity, otherwise having cognizance of the case, should measure the rights of one party by the cost to the other, committing the injury, to prevent either its commission or its continuance. As it was put in the English cases, it would be a sorry condition of the law if the courts were compelled to hold that the property of another might be taken because it would be either inconvenient or expensive to the one committing the nuisance to restrain or prevent its continuance."

In 2 Wood on Nuisances (3d Ed.), p. 1183, §802, the text reads: "A person cannot go on and build extensive works and make heavy expenditures of money for the exercise of a trade or business that will invade the premises of another with smoke, noxious vapors or noisome smells, to an unwarrantable or unlawful extent, and then, when called upon to desist, turn around and claim immunity for his trade or business on the ground that to stop it would involve him in ruin; nor that it is a necessary result of carrying on his trade at all, and that he has adopted the most improved methods known to science or which human skill has devised, nor that his trade is a useful one, and beneficial to the community, or to the nation, * * * for, although his trade may be a lawful one, and conducted with the highest regard to producing as little injury as possible, while it may be that the injury produced from it is a necessary incident to the exercise

of the trade at all, and while to stop it may be injurious to him, may involve him in ruin even, yet these facts cannot protect him; if the plaintiff's rights are clear, and the nuisance conclusively established, his works must be stopped, regardless of consequences to him, 'for he ought to have established his trade in great commons or waste places, away from great cities and human habitations.' Neither will the fact that when he erected his works no houses were near, but that the plaintiff has come *to* his works, in any measure operate to protect him, for he should have taken the precaution to purchase enough of the surrounding property when he built his works, to prevent the possibility of such results. By setting up his trade in the suburbs of a town, away from human habitations, he could not preclude others from coming there to occupy their lands for any of the ordinary or lawful purposes to which they might desire to devote it.''

Considering the entire record we have reached the conclusion that this judgment should be, and it is, set aside and the cause be reinstated upon the docket of the district court, and further proceedings, if any, should not be inconsistent with the views expressed in this opinion. The trial court should give the defendants, if they so desire, a reasonable time within which to discontinue the nuisance, if this can be done; otherwise the injunction as prayed for by the plaintiff should be granted.

Judgment reversed and cause remanded with instructions.