No. 14,422.

TWIN LAKES RESERVOIR AND CANAL COMPANY v. SILL.

(89 P. [2d] 1012)

Decided April 10, 1939. Rehearing denied May 1, 1939.

216

Mr. Harry E. Mast, for plaintiff in error.

Mr. A. J. Laing, Mr. Fred W. Mattson, Mr. A. B. Mattson, for defendant in error

*In Department.*

Mr. Justice Bakke delivered the opinion of the court.

Action in trespass for damages and injunctive relief by private landowner against a mutual water storage and canal company. From a judgment against it below, the company seeks reversal on writ of error. Reference will be made to defendant in error by name and to plaintiff in error as the company.

Sill was the owner and occupant of a five-hundred-acre ranch in Lake county, upon which he had lived and where he had farmed for many years. Through his land flowed Lake creek, a natural stream on the eastern slope of the Continental Divide, which, after a course of about nine miles, emptied into Twin Lakes, two artificial bodies of water used as storage reservoirs by the company. Prior to 1935 the company had acquired substantial water rights on the head waters of the Roaring Fork river on the western side of the divide, and had constructed a tunnel under the divide to bring the water to the eastern slope, discharge it into Lake creek, thence into the Twin Lakes and then into the Arkansas river by which it was carried to farming lands in Crowley county and used for irrigation. The tunnel was completed in 1935 and the first water was diverted through it May 23, of that year.

Sill's cause of action is founded on the damage to his land and property by the increased flow of water in Lake creek through the tunnel which allegedly caused it to overflow and wash away its banks, thereby flooding his land, destroying a considerable part of his fencing, rendering portions of natural hay land worthless, and scattering rocks and debris over much of the balance of his farm. He asked damages in the sum of about $8,500 for the years 1935, 1936, and 1937. The jury allowed him $590. The court entered judgment in his favor in that amount, and on the injunctive branch of the case decreed: "That the defendant, its employees, agents, representatives and attorneys, be and they are hereby perpetually enjoined from emptying any water into the natural

stream known as Lake creek in Lake county, State of Colorado, so as to cause said Lake creek to overflow, flood or wash away any of the land belonging to the plaintiff described in the complaint filed herein, and from flowing or transporting any water over, through, upon or across the plaintiff's said land other than through and along the course or channel of said Lake creek as it existed on May 23, 1925, and from in any manner flooding or washing away any of the plaintiff's said lands, and * * * that this injunction be stayed for a period of thirty days from the date hereof to permit the defendant, if it be so advised, to institute proceedings under the eminent domain act to acquire a right of way or the right to flow and transport its water over and across plaintiff's said lands, and if such proceedings are instituted and diligently prosecuted by defendant to termination and the defendant pays whatever judgment may be rendered therein then this injunction shall be permanently stayed, otherwise it shall be in full force and effect after said thirty day period.''

The company submits thirty-three assignments of error which we shall consider under the following headings: 1. The motion for a change of venue. 2. The pleadings. 3. The evidence. 4. The instructions. 5. The decree.

1. There was no error in denying the motion for a change of venue. The cause was tried in the county where the injury to real estate is alleged to have taken place. Section 25 of the Code, volume 1, page 34, '35 C. S. A., provides that actions ''for injuries to real property'' shall be tried in the county ''in which the subject of the action * * * is situated.''

2. As to the pleadings, the principal objections are directed to the court's refusal to order the amended complaint to be made more definite and certain by setting forth the legal subdivisions of each individual tract damaged, and the amount of damage to each tract. Such a requirement would have been entirely superfluous. The complaint sets forth a description of the

land owned by Sill and the manner in which it was damaged. At what points the damage occurred and the extent of same was a matter to be established by evidence. Evidentiary matter need not be pleaded. The amended complaint was not bad for uncertainty. There was no improper joinder of causes of action in seeking injunctive relief in addition to the damages. *Larimer County Canal Co. v. Larimer & Weld Res. Co.*, 26 Colo. App. 380, 385, 143 Pac. 270. Nor did the court err in sustaining Sill's demurrer to the company's second defense wherein the latter alleged it had a right to turn the water conveyed through the tunnel into Lake creek (Constitution, art. XVI, §6; '35 C. S. A. vol. 3, c. 90, §100; C. L. §1702) a natural stream, and that any damage to a riparian owner by virtue of such action is damnum absque injuria. These allegations are nullified and the court's ruling is sustained by section 80, chapter 90, volume 3, '35 C. S. A. (C. L. §1683), which in effect provides, that while the company may conduct water through the tunnel and into Lake creek, it may not by such procedure "raise the waters thereof above ordinary high water mark."

Technically, of course, it may be argued that the dam, canals and ditches owned by the company on the Western Slope and the tunnel, taken together, do not physically constitute a reservoir, within the meaning of section 80, supra, and that if the general assembly had intended to include dams, canals, ditches and tunnels it would have so provided in the 1935 act. S. L. 1935, c. 143. Be that as it may, we have no hesitancy in holding that in the circumstances presented in this case, the company's dam, ditches, canals and tunnel, taken together, may be considered as a reservoir within the meaning of said section 80. To hold that they do not, so far as damage to Sill's land is concerned, would be a distinction without a difference. Our holding is fully justified by section 91 of chapter 90, supra, which reads: "None of the provisions of sections 83 to 92 [alluding to certain duties of water commissioners and the state engineer] of this

chapter shall be construed as relieving the owners of any such reservoir from the payment of such damages as may be caused by the breaking of the embankments thereof, but in the event of any such reservoir overflowing, or the embankments, dams or outlets breaking or washing out, the owners thereof shall be liable for all damage occasioned thereby.''

The company admits the construction and maintenance of a dam on the Western Slope by which it can raise the water twenty-five feet, and that it is used for the purpose of producing pressure to force water through the tunnel. While it is not contended that it broke or washed out, it had that effect on Lake creek when the pressure was on, as the company admits it was.

We deem it no violation of the purpose of the above statutes to hold that in this, and similar cases, they should be so construed as to include inlets to, as well as outlets from, reservoirs in connection with natural streams, whereby the latter are used to carry abnormal amounts due to delivery therein of privately owned water.

3. The evidence in the case was conflicting. Several of the witnesses testified that in all of the years that Sill had lived on his place there had been no such floods as occurred after the company's water was diverted through the tunnel, discharged into the stream, and which caused the damage to his property. In his brief the company's counsel says, ''apparently the court and jury believed it.'' We do not disturb a verdict based on conflicting evidence. While some expert testimony was tendered and excluded by the court, no prejudice resulted from its rulings in that respect because of the otherwise established facts of destruction to which the tendered evidence was directed.

4. In view of the theory adopted by the trial court in sustaining the demurrer to the company's second defense, which ruling we approve, no error was committed in the refusal of tendered instructions relating to the constitutional and statutory provisions already dis-

cussed. We also are of the opinion that the evidence fully justified the giving of instruction No. 3 embodying the statutory inhibition against raising the high water mark in natural streams by the addition of stored water thereto.

5. Finally, the company contends that the decree is invalid because it legally cannot be compelled to condemn a right of way in a public stream for the purpose of transporting its appropriated water. That the decree does not require such action is apparent. It first restrains the company from using Lake creek in such a manner as to flood Sill's land, and this can be accomplished under the plan suggested by the president of the company, "by dredging the creek." The alternative is "to institute procedings under the eminent domain act to acquire a right of way or the right to flow and transport its water over and across plaintiff's said lands." This alternative includes the phrase "if it [the company] be so advised."

If the decree imposes some practical difficulties in the way of expense or inconvenience, that fact does not affect its validity. As we said in *Krebs v. Hermann,* 90 Colo. 61, 70, 6 P. (2d) 907, quoting from *Suffolk G. M. & M. Co. v. San Miguel C. M. & M. Co.,* 9 Colo. App. 407, "We know of no principle by which equity, otherwise having cognizance of the case, should measure the rights of one party by the cost to the other, committing the injury, to prevent either its commission or its continuance."

Briefly, the finding in this case is that the owner of land bordering a natural stream is subject only to natural, not man-made, hazards.

Judgment affirmed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE BURKE concur.