BLACKFORD, Respondent, v. HEMAN CONSTRUC-TION COMPANY et al., Appellants.

### St. Louis Court of Appeals, June 23, 1908.

1. **NUISANCES: Quarries: Injunction: Negligence.** Where a quarry in a large city is so managed, in blasting with danger-ous explosives, as to damage the property, endanger the safety and affect the health of a neighboring owner, such use of the quarry may be enjoined regardless of whether it is operated negligently or not.

2. ———: ———: ———: **Qualified Restraining Order.** It was proper for a court, where an injunction proceeding was brought by a neighboring owner to restrain the improper use of a quarry, to make a qualified restraining order, restraining the owner of the quarry from so blasting as to throw stones upon the plaintiff's premises or to put in such heavy blasts as to jar the plaintiff's buildings and cause them to vibrate, or to so use a stone crusher as to permit lime dust to escape and af-fect the comfort and health of the plaintiff, without restrain-ing the running of the quarry altogether.

3. ———: ———: ———: **Laches.** Where one residing in the neighborhood of a quarry sought to restrain the improper use of the quarry by injunction, his action could not be defeated on the ground of laches, although the quarry had been in oper-ation for a period of ten years, where it was shown that the dangerous and improper use of the quarry had only been con-tinued for a period of two years before the action was brought and where it was not shown that the plaintiff's acquiescence in the running of the quarry had caused the owner to change his conduct with respect to it or increase his expenditures.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*Hickman P. Rodgers* for appellant.

(1)    Plaintiff was not entitled to the relief prayed in his petition, because: On the face of his petition, and under the testimony in the case he was guilty of gross. laches.    18 Am. and Eng. Ency. Law (2 Ed.), p. 97 and note 4.    (2)    The decree is too general; and is so worded as to unnecessarily infringe defendants'' rights in the premises.    Schaub v. Construction Co.,. 108 Mo. App. 122; McMenomy v. Band, 87 Cal. 134.

*Thomas G. Rutledge* for respondent.

(1)    A nuisance, if continued, becomes a fresh nuisance every day, and authorizes new suits accordingly.    It is a new nuisance every day it continues to remain unabated.    Neither the Statute of Limitations nor the doctrine of laches applies to continuing nuisances.    No one can acquire a right to maintain a nuisance by license or prescription.    A person can even come or move to a nuisance with a knowledge of its existence, and then abate it.    Paddock v. Somes, 102 Mo. 226; McCowan v. Railroad, 23 Mo. App. 203; Cooiey on Torts (1 Ed.), 738; 21 Am. and Eng. Ency. Law, p. 691; 18 Am. and Eng. Ency. Law, 121, 122; Hurlburt v. McKone, 55 Conn. 31; Powers v. Railroad, 158 Mo. 87; Schlitz Brewing Co. v. Compton, 142 Ill. 511. (2) Vibrations, jarring of the house, and the noises and dust are alone such an interference with the respondent's rights as the court will enjoin, irrespective of the question of damages.    Kirchgraber v. Lloyd, 59 Mo. App. 59; Redd v. Colton Mills, 136 N. C. 342; Friedman v. Iron Co., 91 N. Y. S. 129; Railroad v. Goll, 100 Ill. App. 323; Hennessey v. Carmody, 50 N. J. Eq. 616; Demarest v. Hardham, 34 N. J. Eq. 469; Dennis v. Eckhart, 3 Grant 302; Wood on Nuisance, p. 835, par. 619.

NORTONI, J.—This is an action in equity, seeking injunctive relief against the operation of a quarry

alleged to be a private nuisance.  The circuit court. decreed a perpetual injunction and the defendants appeal.  The quarry is situated in the very heart of the city of St. Louis.  Its precise location is on a plat. of ground fronting 250 feet on the north line of Forest Park Boulevard, by about 187 feet north therefrom to an alley; the west line of said plat of ground is about 130 feet east of Spring avenue.  The north one-half of said block on which the quarry is situated, is occupied by numerous family residences.  Plaintiff owns a lot of ground upon which his residence, No. 3670 Laclede avenue, is located.  It fronts about twenty-five feet on the north line of Laclede avenue and extends south therefrom about 187 feet to a twenty-foot alley, passing between his property and that of defendants' upon which is located their quarry.  Plaintiff's residence consists of a two-story brick dwelling house of nine rooms, valued at $9,000.  The rear of his dwelling is. about 130 feet from the north side of the opening of the quarry.  On the rear of plaintiff's lot is a shed with the roof constructed of tar and gravel. Plaintiff had owned and occupied his residence about eleven years before the institution of this suit.  The defendants' quarry has been in operation about ten years. The limestone therein lies in ledges varying from four to eight feet in thickness.  At the date of the institution of this suit, the quarry had attained a depth of about 110 feet.  Giant powder and dynamite are constantly used therein for blasting heavy ledges of rock. The evidence tended to prove that for some time recently before the institution of the suit, several heavy blasts were discharged therein daily except Sundays, many of which occasioned stones, some as much as nine inches in diameter, to ascend far above the earth and fall upon the property of plaintiff and his neighbors.  The tar and gravel roof of the shed on plaintiff's property has been entirely destroyed by stones falling thereon from

the quarry.    A number of times stones have fallen upon and about his house, one of which lodged in the fork of a small tree about four inches in diameter, and split it to the earth.    On numerous occasions stones have fallen so near members of his family about the premises as to threaten their safety.    One of his neighbors testified to a stone having fallen through a skylight and into the room of his residence in which he was sitting.    Others testified to stones having fallen in Laclede avenue, as much as two hundred feet away from the quarry.    Others gave evidence of stones having fallen on their houses and about their yards in the same block.    A painter engaged at his trade in the block, testified to having received an injury to his leg from a stone falling after a blast at the quarry.    Plaintiff and others testified as to their several properties being jarred and shaken from the heavy explosions incident to the blasting; that three bricks were jarred loose and fell from the cornice of plaintiff's house; that the mortar had been jarred loose because of the severe vibrations and fallen from between the bricks in the walls of his residence; great sheets of plastering had been jarred loose and fallen in the rooms of his residence as was the case with respect to several other residences as well. Numerous witnesses testified to the extreme noise from the explosions.    One, a sergeant of police, residing in the block, who was on duty at night and slept in the daytime, testified to being frequently awakened thereby; and the plaintiff and his neighbors gave evidence to the effect of extreme nervous shocks causing them to quiver and jump when some of the explosions took place. It appeared that the paper on the walls of residences in some instances was cracked because of the vibrations of the earth therefrom, and that dishes on the table and in the closet as well as windows of the houses, were frequently rattled and jarred.    In connection with the quarry, defendants maintain a plant for the crushing

of stone on the same plat of ground. This plant appears to be two stories high, is equipped with heavy machinery appropriate to the purpose, and when in operation, creates a fine dust resulting from the crushing of limestone. This dust is constantly being blown by the wind into the residence of plaintiff and his neighbors, accumulates on the dishes, on the carpets, curtains and furniture, and operates as a source of annoyance and discomfort. When the house is closed, it percolates around the windows and doors. To add to this discomfort, noxious gases and noisome odors are almost constantly emitted from the prosecution of the quarry and stone-crusher, permeating the atmosphere in and about the residence of the plaintiff and his neighbors. It also appears that besides the dangers and discomforts mentioned, the plaintiff's property has been depreciated in value to the extent of twenty-five per cent.

The court decreed a qualified injunction. The defendants and each of them were perpetually enjoined from so operating their quarry, or permitting the same to be so operated, as to: first, throw rocks and stones on the plaintiff's lot; second, as to jar the buildings on plaintiff's said lot or cause the same to shake and vibrate; or third, to destroy or impair the comfortable use and occupancy of such buildings by loud and deafening explosions and sounds produced in the quarry; and fourth, from so operating their stone crusher had in connection with the quarry or permitting the same to be so operated as to cause a fine limestone dust to fly from said machine across plaintiff's lot and settle in his residence.

It is said by Mr. Wood in his excellent work on Nuisances (3 Ed.), sec. 140, that the blasting of rock by the use of giant powder and other explosives in the vicinity of another's dwelling house, is a nuisance where the blasting is negligently done. There is no proof

of negligence in this case unless such may be inferred from the loud and severe explosions. Be this as it may, the case falls within the rule with respect to the employment of dangerous explosives in a large city. There are numerous authorities to the effect that where explosives, as in this case, are employed for blasting purposes contiguous to another's property in a large city such must be regarded as an unreasonable, unnatural and unusual use of his property. Such unreasonable use of property to the substantial impairment of the rights of another, will authorize either injunctive relief as against a nuisance, or an action at law for resulting damages, even though the calling is entirely lawful and it is prosecuted with the utmost care and skill. In such circumstances, the question of negligence is entirely beside the case. Although defendants have, beyond a doubt, the right to quarry stone on their property, the plaintiff enjoys the right to undisturbed possession of his home. If these rights conflict, the right to operate the quarry must yield to the latter, which, in the eye of the law, is the more important of the two, for upon grounds of public policy, it is better that one man should surrender a particular use of his land than that another should be deprived of the beneficial use of his property altogether, which would result, if the privilege of the quarry should be wholly unrestricted. Even in the absence of negligence, throwing stone or soil upon the property of another as a result of blasting, amounts to an actual trespass. [Colton v. Onderdonk, 69 Cal. 155; Hay v. The Cohoes Co., 2 N. Y. 159; Tremain v. The Cohoes Co., 2 N. Y. 163; Fitz Simons v. Braun, 199 Ill. 390; Tiffin v. McCormick, 34 Oh. St. 638; Glycerine Co. v. St. Mary's Woolen Mfg. Co., 60 Oh. St. 560; Schaub v. Parkinson Bros. Const. Co., 108 Mo. App. 122, 82 S. W. 1094; Regina v. Mutters, Leigh & Caves C. C. 491; Monroe v. Dredging Co., 84 Cal. 515; Thurmond v. Ash Grove, etc., Co., 125 Mo. App. 73, 77, 102 S. W.

617; 12 Am. and Eng. Ency. Law (2 Ed.), 508, 9, 10; 1 Thompson, Com. on Neg., 764.]

Besides such blasting as resulted in throwing stones upon plaintiff's premises, the court enjoined the defendants from jarring plaintiff's buildings so as to cause them to shake and vibrate. The jarring and causing the buildings to vibrate, as in this case to the injury of another by means of the employment of explosives and the operation of heavy machinery, is frequently enjoined as a nuisance. [Wood on Nuisances (3 Ed.), secs. 622, 624, 642; McKeon v. See, 51 N. Y. 300; McKeon v. See, 4 Robertson's Rep. (N. Y.) 449; Scott v. Firth, 10 L. T. (N. S.) 240; Robertson v. Campbell, 13 F. C. (S. C.) 61.] And likewise the defendants may be enjoined from permitting the escape of fine limestone dust which disturbs the comfortable enjoyment of the plaintiff's premises. [Wood on Nuisances (3 Ed.), sec. 508; Hutchins v. Smith, 63 Barb. (N. Y.) 252.] Although a trade is lawful in itself, one will not be permitted to conduct it in a locality, such as a residence district in a city, where, by reason of the unusual noise incident to the business, it entails substantial injury upon others by diminution of the comfortable enjoyment of life or property. [Wood on Nuisance (3 Ed.), sec. 619; Fish v. Dodge, 4 Denio (N. Y.) 311; Wallace v. Auer, 10 Phila. 356; 21 Am. and Eng. Ency. Law (2 Ed.), 695, 96, 97.] The doctrine fundamental of preventive relief in respect of nuisance, is that one person has no right to exercise acts of ownership over his property, even in a lawful manner, so as to materially and substantially impair the rights of his neighbor; and therefore the test of a nuisance is not alone injury and damage, but it is injury and damage resulting from the violation of the lawful rights of another. [Wood on Nuisances (3 Ed.), sec. 880; Paddock v. Somes, 102 Mo. 226, 237, 14 S. W. 746.]

It is argued on the part of defendants that plain-

tiff's laches and acquiescence were such as to preclude the court from granting the relief given in the decree. The argument predicates upon the facts that the quarry had been in operation immediately adjacent to the plaintiff's residence for ten years before the institution of this suit and that it represents an investment of about $25,000. The equitable doctrines of laches and acquiescence are very much akin and almost identical. These doctrines, however, do not obtain with the rigor of the Statute of Limitations. The Statute of Limitations arbitrarily precludes the enforcement of an existing right by the lapse of time prescribed, whereas the doctrines of laches and acquiescence arise from the fundamental principles of natural justice, inherent in the particular cause with which the court is called upon to deal. An examination of the cases will disclose that the courts only enforce the doctrine of laches against an existing right in those cases where it would be highly unjust and inequitable to enforce the right, notwithstanding laches of the plaintiff. The doctrine, arising as it does from the principles of justice, proceeds upon the theory that it would be unjust to enforce the plaintiff's right under circumstances where his delay has placed his adversary at a disadvantage in some manner or has caused him to invest means or materially change his course of conduct because of the failure of the plaintiff to assert his right at an earlier date. Acquiescence implies assent. The doctrine is invoked to preclude relief in cases where it appears the defendant, acting upon this implied assent, has materially changed his conduct with respect to the subject-matter. It is certain that mere lapse of time alone is entirely without influence in those cases where the Statute of Limitations does not obtain. [Gallagher v. Cadwell, 145 U. S. 368, 373; St. Louis Safety Deposit Co. v. Kennett Est., 101 Mo. App. 370, 397, 74 S. W. 474; Spurlock v. Sproule, 72 Mo. 503; 18 Am. and Eng. Ency. Law (2

Ed.), 97, 100; 1 Beach on Injunctions, secs. 42, 43.] Although it appears the defendants' investment at and about the quarry amounts to $25,000, there is no word in the testimony tending to show that the investment or defendants' conduct in any respect for that matter, was induced by the fact that plaintiff failed to complain of the nuisance, if such it was, theretofore. From all that appears the investment may be no larger now than it was the first day of the quarry's operation. Nothing whatever indicates that defendants were encouraged because of plaintiff's delay to increase their plant or expend any means, change their conduct or situation in any manner. This being true, there appears to be no sound principle of equity invoking the doctrine of laches or acquiescence against plaintiff's right to relief. However all this may be, when the facts in proof are carefully scrutinized, no word or circumstance therein indicates that the plaintiff had any right to relief until within the last two years before the institution of the suit, for all of the proof goes to show the occurrence of the acts complained of within the two years last past. It is possible for a quarry to be operated, even in the situation of this one, without entailing annoyance upon the neighbors, and it may be that this quarry was operated for many years so that no violation of the plaintiff's rights occurred. At any rate, the proof tends to show only that his rights have been invaded for about two years next before the institution of the suit, during which time the acts which produced the nuisance seem to have increased. It is certain that acquiescence in the conduct of noxious works, when they produce little or no injury, does not operate acquiescence to the same works after they are greatly enlarged and productive of greater injury. [Bankhart v. Houghton, 27 Beav. 425.] And, indeed, it has been determined that where the fact of nuisance is clearly established, as in this case, and nothing appears tending to

show the defendant has changed his conduct or increased his expenditures on account of apparent condonation arising from plaintiff's conduct, the court will not adjudge laches or acquiescence to arise from a short period of delay. [Meigs v. Lister, 23 N. J. Eq. 199.]

The decree was given in a modified form. The intention of the chancellor is obvious to restrain only the conduct of the quarry and stone-crusher in its present offensive manner. It has been well said that such decrees are to be commended when they meet the exigencies of the case, for the freedom of action on the part of one ought not to be curtailed more than the right of relief on the part of another demands. [Schaub v. Parkinson Const. Co., 108 Mo. 122; 2 Beach on Inj., sec. 1072; McMenomy v. Baud, 87 Cal. 134.]

Among other things, the decree enjoined "operating such quarry or permitting the same to be so operated, as to jar the buildings on plaintiff's said lot, or to cause the same to shake and vibrate." The argument advanced against this portion of the decree is that the employment of the word "vibrate" therein operates to effectually enjoin the operation of the quarry. It is said that it is impossible to prosecute work at the quarry without causing the plaintiff's house to vibrate, and that the decree should be modified by inserting the words immediately thereafter; "to his injury or damage." The argument must be examined with respect to the facts in proof. The word "vibrate" is defined by the Standard Dictionary, as follows: "To give a rapid, swinging or oscillating motion to; move to and fro, especially with a quick motion, move or swing back and forth; oscillate." Now it is certain that the word "vibrate" awards to the plaintiff the measure of relief only to which he is entitled. By reference to the facts upon which the decree is given, it appears the vibrations from unusual explosions caused plastering to fall from plaintiff's ceiling, bricks to work loose and fall from

the cornice of his house, and the mortar to crumble from between the bricks in the walls. It therefore appears the vibrations contemplated by the decree entailed a substantial injury to the plaintiff's property. The principle of equity invoked is available to prevent the identical injury mentioned. When we consider that the swinging or oscillating of brick walls with a quick motion, as given in the definition of the word "vibrate" above referred to, essentially entails such results, it seems certain the argument advanced is unsound. If the quarry cannot be operated without causing plaintiff's house to thus vibrate, then its entire operation should be perpetually enjoined. No doubt the business can be successfully prosecuted without such vibrations by employing a lesser quantity of explosives therein.

The judgment will be affirmed. It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.