JOHN McNULTY et al., Respondents, v. HARRY E. MILLER, Appellant.

Kansas City Court of Appeals, November 25, 1912.

1. INJUNCTION: Animals: Stallions: Breeding: Noises. Injunction will lie to restrain one from keeping and breeding stallions and jacks to mares in a barn so near to inhabitants in a town as that the unseemly noises made by the animals while teasing and covering mares were such as to scandalize the neighborhood and from sense of shame and. embarrassment to drive the women and children into the house from their yards and porches.

2. ————: ————: Nuisance: Sense of Hearing. Though the breeding of stallions to mares was in an enclosed barn and could not be seen by the people in the immediate vicinity, yet if the noises were such as to scandalize the neighborhood and

·embarrass the use of their property by the residents therein, it would be a nuisance through the sense of hearing. A nuisance may be made known through the sense of hearing as well as sight or smell.

Appeal from Andrew Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

. *B. R. Martin* and *C. C. Crow* for appellant.

*W. R. Littell* for respondents.

ELLISON, J.—Plaintiffs are residents and property owners in the town of Tarkio, and instituted this action to enjoin and restrain defendant from using a certain building and corral as a breeding barn by the use of stallions and jacks. The decree in the circuit court was in their favor.

The decree suppressed an aggravated and disgusting nuisance and was therefore right. Plaintiffs lived in their homes at distances from two hundred to four hundred feet from defendant's frame barn which he erected near the street in Tarkio for the sole purpose of keeping stallions and jacks to breed to mares. The plaintiffs' families consisted of their wives and children, some of the latter being grown girls. Others were young, of both sexes. The evidence showed that from spring till fall defendant kept three stallions and a jack to which he bred mares that were brought to his place for that purpose. The corral was enclosed with a high board fence, and on the level one could not see in it or the barn. But mares, many of them each day, were brought to the place and taken away. They were frequently hitched outside, in sight of the families. Their coming and going were in full view. The neighing, kicking, squealing and biting of the animals was terrific to small children, who asked their moth-

ers what it meant.  Older members of the families, from a sense of shame and modesty, were practically deprived of the use of their yards and porches and driven into the houses.  They were embarrassed in having company at their premises, and some people went around over byways to avoid that street.  The evidence in behalf of plaintiffs clearly shows a depreciation in the value of property, and that for defendant but tamely combats it.  A prosecution by the town for a violation of an ordinance which forbids the acts of defendant was sustained at this term in a case submitted with this.

Equity affords relief in such situations as here presented.  A like case was before the Supreme Court in which our view of the matter finds direct support. [Hayden v. Tucker, 37 Mo. 214.]  It will be observed from the statement made in that case that the act of covering the mares could be seen from the outside, while here the act itself was screened from the sight. But it is obvious that a thing may be made a nuisance through other senses.  Hearing many things identifies them completely without being corroborated by sight.

There is no need to discuss whether defendant's acts constitute a public or a private nuisance, or whether something of the nature of both.  Certain it is that the offensive acts are recurring and that they are of such nature that no money damage can afford relief (Paddock v. Somes, 102 Mo. 226, 240) unless we are to assume that plaintiffs' right to reside where they will, can be made subject to defendant's choice of business.

The judgment is affirmed.  All concur.