231 S.W.2d 875 (1950)
BIGGS et al.
v.
GRIFFITH.
No. 6849.
Springfield Court of Appeals. Missouri.
July 12, 1950.
*876 John S. Phillips, Poplar Bluff, for appellant.
Byron Kearby, Poplar Bluff, for respondent.
McDOWELL, Judge.
In this action plaintiffs seek to enjoin defendant from operating a public address system by means of a loud speaker mounted on his automobile and on his theatre building, through which defendant advertises the attractions to be presented at his theatre, in Neelyville, Butler County, Missouri.
The cause was filed in the Circuit Court of Butler County, Missouri. A temporary injunction was granted by the court on October 8th, 1948, enjoining defendant, his agent, servants and employees from operating said system.
The cause was tried and the court, on the 13th day of December, 1948, rendered judgment sustaining plaintiffs' petition and enjoining defendant from operating said loud speaker and public address system as prayed for in the petition. From this judgment defendant appeals to this court.
Plaintiffs' petition states that they are residents of the village of Neelyville, Missouri, and their business places and dwelling houses are situated within a radius of about two city blocks of the theatre building operated by defendant; that there are churches and schools and other public buildings near defendant's theatre.
The petition then states that defendant has equipped his motor truck with a large public address system or a loud speaker and he has located, on his theatre building, a loud public address system, known as a loud speaker. The petition then states that *877 for the past several months, and between the first of September and the 8th of October, 1948, defendant, to the annoyance and discomfort of plaintiffs herein, operated his theatre on Mondays, Wednesdays, Fridays, Saturdays and Sundays in the afternoon and nights of said days; that defendant paraded the streets of said village and in front of and near the business houses and residences of plaintiffs, churches and schools and while funerals were being conducted, made loud and unusual noises with said public address system by playing numerous and divers tunes, songs and music and by announcing the attractions at his theatre.
Plaintiffs state that the volume of said loud speaker is so great that it can be heard miles from the theatre to the annoyance and discomfort of plaintiffs and their families in the peace and contentment of their homes and their businesses and to the disturbance of public religious worship, the conducting of funerals and the pupils in their studies while at school; the petition states the loud speaker operated on the theatre building and the announcement and music therefrom are of such great volume that the same can be heard for miles, all to the discomfort, quiet and contentment of plaintiffs' homes.
The petition then pleads that defendant willfully and wantonly and with utter disregard of the rights of plaintiffs and their families, parked his automobile, equipped with the public address system or loud speaker, in front of plaintiffs' homes and used vile and vulgar and indecent conversation over said system, to the annoyance of plaintiffs. Then plaintiffs plead that because of said willful acts on the part of defendant, in the use of said public address system, plaintiffs and their families are disturbed by day and night in the quiet and contentment of their homes and they have no adequate remedy at law.
Defendant's answer admits that he operates a theatre in Neelyville; that he has a loud speaker or public address system mounted on his automobile and theatre building, but denies that it is as designated "large." The answer admits that defendant operated said theatre between the first of September and the 8th of October, 1948, on Wednesday nights, Friday nights and Saturday afternoon and nights and that he used his automobile, equipped with loud speaker to announce attractions at his theatre and used a loud speaker on his theatre building to advertise attractions at the theatre and to play music on said machine and denies all other allegations in plaintiffs' petition.
The judgment of the trial court is as follows:
"Wherefore, it is ordered, adjudged and decreed that plaintiffs' petition be sustained and that the defendant, his agent, servants and employees be and they are hereby enjoined and restrained from operating a loud speaker, public address system or music maker or any type whatsoever upon the outside of their theatre building located in the village of Neelyville, Butler County, Missouri, and the defendant, his agent, servant and employees are further restrained from operating a public address system in and upon the streets of Neelyville, Butler County, Missouri."
In defendant's assignments of error, he treats the first four assignments together and, in his brief, states "Appellant contends that the court committed error in finding for the plaintiffs in this case."
Under Assignment V, defendant states there was insufficient evidence offered by the plaintiffs to sustain the judgment of the court and, under assignment VI, defendant complains of the court's finding that there was a private nuisance and states that if there were a nuisance, it was a public nuisance.
We hold that all of the assignments of error complained of by defendant amount to but one contention, that is, that there was not sufficient testimony to sustain the judgment of the trial court.
We here state such parts of the evidence as we deem necessary to the determination of the issue raised in the case.
The evidence shows that Neelyville is a village in Butler County, Missouri, of about 350 or 400 people; that the plaintiffs live in and operate businesses within a radius of *878 about 4 blocks of the defendant's theatre building; that defendant operated a theatre in this village for about 12 or 13 years and, during the times complained of in the petition, admits that he advertised his show business by placing a loud speaker and public address system on the top of his show building and on his automobile, which he drove up and down the streets, advertising his show. There is some conflict in the testimony as to the times or days of the week that defendant operated his show.
Each of the plaintiffs were business men, operating their business, some immediately beside the theatre building and others within a short distance thereof. The testimony shows that the Missouri Pacific Railroad passes through the town and a part of the plaintiffs live on the west side of the railroad, where the theatre building is located, and part live on the east side. The plaintiffs' dwelling houses are adjacent to their businesses. The town is approximately a half mile north and south and a quarter of mile east and west and contains about 25 or 30 business houses.
Each of the plaintiffs, who testified, complained that the noise made by the defendant, in operating his public address system, on both the theatre and on his automobile, disturbed them in their business, interfered with them in dealing with their customers; some stated they had to close the doors of their businesses in order to wait on customers; some stated that it made them very nervous by the loud and squeaky noises; some of the plaintiffs testified it affected the peace and welfare in their homes; one plaintiff testified he could not put his children to bed because of the loud noises of this public address system; another testified that it made him nervous and affected his health. The testimony, generally, was that the noise created by the defendant in his advertising over his public address system, was injurious to both the businesses of the plaintiffs and disturbed their peace in the home.
There was testimony that the noise was so loud that the citizens could not hear the trains coming through the towns and the schools were disturbed by defendant's advertising; that it also disturbed the church people in their services. The testimony also showed that a number of plaintiffs complained to the defendant about the disturbances that he was making with the public address system so operated, without any success. There was testimony from people who lived in the country that they could hear defendant's public address system from two to four miles away.
The testimony also showed that defendant played records on his automobile and on his theatre building, in advertising his shows, which were bad and made a squeaky and shrill noise, disturbing plaintiffs who lived in the immediate vicinity.
One witness testified that defendant's son drove defendant's car in front of Charles Biggs' residence and, over the loud speaker said, "Let's drive up in front of them s.o.b.'s and advertise."
Plaintiff Burson, a barber, who operates a barber shop a few feet from the theatre, testified the loud noise affected his nerves and health.
Now plaintiffs' testimony was to the effect that defendant would start advertising about 10:00 o'clock in the morning and continue at intervals throughout the day; that, after defendant had made his rounds through the town, he would hook up the speaker to the public address system on his building and play records and run continuously until the show started. One of the songs played was the "Woodpecker" song. All of plaintiffs' testimony was to the effect that the noise was unusually loud and their peace was disturbed and their business affected. One witness stated it so affected his business that he had to shut up the back end of the store to talk to his customers or to use the telephone. Some of the witnesses testified that defendant would park his automobile in front of his theatre and play records so loud as to injure their business up until the time the show started. Many of the plaintiffs testified they could not use their telephones during defendant's advertising of his shows; that they had trouble talking to their customers and one plaintiff testified *879 he even lost business because of defendant's conduct.
We quote the answer of plaintiff, Fred Biggs, in answer to a question as to what defendant did with his loud speaker, which he had on his automobile: "A. Well he, sometimes he would start about 10:00 o'clock in the morning and he go all over town and hollering over that thing and he stopped in front of residences and business places and yelped around on it until about 6:00 o'clock in the evening and then he would, that is when he had a show in the afternoon until about 1:00 or 1:30, and then he drive it up in front of his show "and play records there until the show started and then when the show was over in the afternoon he would start out yelping again for the night show and about the time when he would make his rounds, he would drive it up in front of his shows and play those records and every little bit advertise until the show started."
Defendant's testimony was that defendant operated his theatre in Neelyville for about 12 or 13 years; that the town of Neelyville, in September, 1948, passed an ordinance levying a license fee for operating the public address system or loud speaker of $2.50 a day; that said fee was prohibitive and defendant brought suit to enjoin the collection of such fee. He stated it was then that plaintiffs sought this injunction. Defendant's testimony is to the effect that, although he had operated a loud speaker for a number of years, he had never operated it to annoy the general public.
Defendant's witnesses, most of them living in the country, testified that the loud speaker did not disturb them. Some of these witnesses lived close to the theatre and stated they were not disturbed by defendant's loud speaker.
Defendant's testimony denied that the automobile used was ever equipped, at any time, to permit playing of phonograph records in the car. His testimony further shows that his orders were if a train was approaching, he was to turn down the loud speaker until it passed. Defendant's testimony was that when music was played it was by using a phonograph located on the theatre.
Defendant's testimony is further to the effect that, since the temporary injunction was issued in the case at bar, his business has decreased to the extent that he cannot operate his theatre properly. Defendant contends that the only practical way he can advertise his shows is by his automobile equipped with a loud speaker.
It is the duty of this court to review the evidence and determine the correctness of the chancellor's ruling. We defer to the trial court's findings where the evidence does not convince us that such findings are incorrect. When the evidence does so convince us, then we must make our own findings of fact. Trett v. Lambeth, Mo.App., 195 S.W.2d 524; Hastings v. Hudson, 359 Mo. 912, 224 S.W.2d 945, 950.
In Commission Row Club v. Lambert et al., Mo.App., 161 S.W.2d 732, 736, the court states the purpose of an injunction as follows:
"The purpose of injunction is to restrain acts, actual or threatened; it is frequently termed `the strong arm of equity', or a `transcendent or extraordinary remedy'; the injury must be real, not imaginary. It is one which is to be used sparingly and in clear cases only, and the decree should be so framed as to afford the relief to which the complainant is entitled, and not to interfere with legitimate and proper action on the part of those against whom it is directed. * * *"
The law governing this case is properly declared in Crutcher v. Taystee Bread Company, Mo.Sup., 174 S.W.2d 801, 805:
"It is not disputed but that one may not make such an unreasonable, unusual or unnatural use of his property that it substantially impairs the right of another to peacefully enjoy his property. 39 Am.Jur. § 2, p. 280. Neither is it questioned that a court of equity may issue an injunction enjoining a use of property or a manner of carrying on a business if either constitutes a nuisance injuring another or his property. Blackford v. Heman Const. Co., *880 132 Mo.App. 157, 112 S.W. 287; 30 Am. Jur. § 153, pp. 420-421. Nor is it doubted but that noise or vibration, even from a lawful business, may be of such a character as to be of actual physical discomfort to persons of ordinary sensibilities living near it or so injure adjoining property that it constitutes a nuisance. 39 Am.Jur. Sections 47, 52, pp. 330-335; Wood, Nuisances, §§ 611-612, 619, 622."
We hold, first, that the operation of a theatre, together with proper advertising, even by a loud speaker, or public address system, is not, of itself, a nuisance per se but that it may become such if not operated in a fair and reasonable manner having regard to the rights of adjoining property owners and to the operation of their businesses and to the peace and comfort of their homes.
The right of defendant to operate his theatre and to advertise the progams to be presented thereof in a proper manner is one granted to him under the guarantee of freedom of speech. Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513, 10 A.L.R.2d 627; Crutcher v. Taystee Bread Company, supra.
Again, we quote from Crutcher v. Taystee Bread Company, 174 S.W.2d loc. cit. 805:
"There is no exact rule or formula by which the existence of a nuisance or the non-existence of a nuisance may be determined. `Necessarily each case must stand upon its own special circumstances, and no definite rule can be given that is applicable in all cases, but when an appreciable interference with the ordinary enjoyment of property, physically, is clearly made out as the result of a nuisance, a court of equity will never refuse to interfere, * * *.'"
We agree with defendant that if, under the evidence, defendant was conducting a public nuisance, then plaintiffs could not maintain this action.
The proper rule of law is declared in Lademan et al. v. Lamb Const. Co. et al., Mo.App., 297 S.W. 184, 186. We quote:
"It is quite true that a private person cannot maintain an injunction suit to restrain a public nuisance, unless he shows a special injury to himself, differing in kind and not merely in degree from the general injury to the public. We are by no means satisfied, however, that the assumption that the operation of the quarry constituted a public nuisance is correct. A nuisance is public when it affects the rights to which every citizen, as a part of the general public, is entitled; while a private nuisance, to the contrary, is any unwarranted, unreasonable, or unlawful use by a person of his own property to the injury, annoyance, or detriment of the rights of another, and not amounting to a trespass. The distinction to be applied between public and private nuisances does not depend upon the nature of the act committed, but rather upon the question of whether such act affects the general public or merely some private individual or group of individuals. 29 Cyc. 1152."
In this case the owners of apartment houses in a radius of 500 feet of a quarry joined in an action to restrain the operation of a quarry in manner so as to injure their property and endanger the lives of themselves and members of their families. The damages pleaded and proved were not to the public generally, but to plaintiffs, and the court held that this did not constitute a public nuisance.
An examination of plaintiffs' petition shows that their business places and dwelling houses are situated in a radius of about two city blocks of defendant's theatre; that said theatre is equipped with a loud speaker located on the top of his theatre building and a public address system.
The petition then states that, for the past several months and between the first day of September and the 8th day of October, the defendant, to the annoyance and discomfort of the plaintiffs herein, operated his theatre on Mondays, Wednesdays, Fridays, Saturdays and Sundays in the afternoons and nights of said days; that he paraded the streets of the village in front *881 of and near the business houses and residences of plaintiffs and made loud and unusual noise with said public address system; played numerous and divers tunes, songs and music, etc.; that the same could be heard for miles in the vicinity of his theatre and to the annoyance and discomfort of plaintiffs and their families in the peace and contentment of their homes and their businesses, etc. Then the petition pleads that the defendant willfully and wantonly in utter disregard for the rights of plaintiffs and their families parked his automobile, equipped with the public address system, or loud speaker, aforesaid, immediately in front of some of the plaintiffs' homes; and that he willfully used vile, vulgar and indecent conversation over the microphone, public address system or loud speaker to the annoyance of plaintiffs.
Then the plaintiffs plead that, because of the willful acts of the defendant, plaintiffs and their families are disturbed, both by day and night, in the quiet and contentment of their homes and they have no adequate remedy at law.
A nuisance is public when it affects the rights of which every citizen, as a part of the general public, is entitled.
We cannot agree with defendant's contention that this is a public nuisance. We appreciate that the operation of a public address system is not in itself a nuisance per se, yet we follow the well defined law that the defendant can so conduct such a public address system as to constitute it a private nuisance to the individuals located in the immediate vicinity by disturbing the peace and happiness of such citizens and by injuring their business and property interests.
If the conduct of this defendant was unwarranted and unreasonable and constituted an annoyance and detriment to the rights of plaintiffs, then the trial court was justified in finding it to be a private nuisance and enjoin the defendant from continuing the same.
The evidence in this case shows that the loud and squeaky noise caused by the operation of the public address system by the defendant and the loud speaker used therewith almost continuously during business hours on the days mentioned in evidence and the disturbance of the homes of plaintiffs so that their children could not sleep and the causing of the plaintiffsadults to be nervous, constituted a private nuisance because such acts did not affect all of the citizenship of the village and community nor all of the business interests, but did affect the business and health and happiness of plaintiffs who lived within a radius of not more than four blocks therefrom and, as the evidence showed, affected different plaintiffs differently, depending upon the closeness of their homes and businesses to the theatre.
While it is our duty to examine the entire record before us and to determine from it what the rights and liabilities are, to review the evidence for ourselves and reach our own conclusion as to the judgment of the trial court rendered, yet, in considering the facts, some discretion must be permitted the trial court in issuing an injunction as well as in weighing the evidence.
We are of the opinion that we should not disturb the findings of the trial court in this case. Deevers v. Lando et al., 220 Mo.App. 50, 285 S.W. 746; Langwell v. Willbanks, Mo.Sup., 106 S.W.2d 417; Fessler v. Fessler, 332 Mo. 655, 60 S.W.2d 17; Norton v. Norton, Mo.Sup., 43 S.W. 2d 1024.
We find that there was sufficient evidence in this case to support the decree of the trial court and that, under the law, we should not disturb his findings.
Judgment affirmed.
VANDEVENTER, P. J., and BLAIR, J., concur.