**Charles MITCHELL, a Minor, by his Next Friend, Duke Mitchell (Plaintiff) Appellant,**

v.

**Carl NEWSOM (Defendant) Respondent.**

No. 30941.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

248

Walter Wehrle, Thomas W. Wehrle and Wehrle & Wehrle, Clayton, for appellant.

John C. Shepherd, Paul V. Gilbert and Evans & Dixon, St. Louis, for respondent.

J. P. MORGAN, Special Commissioner.

This action was brought by plaintiff, Charles Mitchell, an eight-year-old minor, by his father as next friend, to recover damages for personal injuries sustained when he was bitten by a dog owned by defendant, Carl Newsom. At the close of plaintiff's case, the trial court sustained defendant's motion for a directed verdict and instructed the jury to return a verdict for defendant. Upon his motion for a new trial being overruled, plaintiff has perfected this appeal.

The final question to be resolved is whether or not plaintiff made a submissible case for the jury, and such determination must depend on a review of the evidence in a light most favorable to plaintiff. Maxwell v. Fraze, Mo.App., 344 S.W.2d 262.

There is virtually no dispute as to the apparent circumstances under which plaintiff was injured. The evidence reveals he resided with his parents two houses from the home of defendant. That defendant's son Tommy was of the same age as Charles, and they were close friends and continuous playmates. That some nine weeks prior to this unfortunate incident, defendant had purchased a sable-colored collie dog named Duke as a gift for his son Tommy. That Duke weighed approximately forty-five pounds, and although there was a doghouse and dog chain in the back yard, he was allowed to run loose and always played with the neighboring children. On the day of injury, May 26, 1956, Charles had gone to the back door of defendant's home and inquired if Tommy could come out to play. While either waiting for Tommy or returning home, he saw Duke at the bottom of the back steps looking at a paper; and when he started to take the paper, was severely bitten on the lower lip by Duke.

That this injury required some twelve stitches and two later operations by a plastic surgeon to remove proud flesh that developed.

■ It has long been established, absent any statutory regulation, that no recovery can be had for injuries inflicted by a dog until his actions are such that his keeper can be charged with knowing there was an inclination to commit the type of act causing the injury.

Any study of reported "dog bite cases" will reveal that there have been periodic reviews of the dog's status in our society. Clinkenbeard v. Reinert, 284 Mo. 569, 225 S.W. 667, 13 A.L.R. 485; State ex rel. Kroger Co. v. Craig, Mo.App., 329 S.W.2d 804. In the latter case, pages 808–809, it was stated:

" * * * in an action against the owner or harborer of a dog for injury inflicted by such animal, defendant's scienter (i. e., actual or constructive knowledge) of the vicious or dangerous propensities of the dog became and still is (except where removed by statute) an essential element of the cause of action and a necessary prerequisite to recovery, * * *. As our Missouri courts have put it bluntly and succinctly in dog bite cases, 'the gist of the action is the keeping of a vicious dog after knowledge of his vicious propensities."

In the later case of Maxwell v. Fraze, supra, loc. cit. p. 264, of 344 S.W.2d, it was stated: "* * * the injury complained of must result from the exercise of the dangerous propensity."

The case of Dansker v. Gelb, Mo., 352 S.W.2d 12, involved a dog having a known tendency or desire to leap on adult strangers, and the court held, at page 16: "Whether the dog lunged or jumped at people out of anger or viciousness or out of playfulness is immaterial so long as the defendant had knowledge of the fact that the dog had a tendency through his actions to injure persons."

Thus, without any effort toward oversimplication, it would appear that the instant case must turn on the answer to one question—Did Duke have a known tendency to bite?

All of the evidence offered, which in any way reflects the tendencies of this dog or the obligation of his owner to appreciate them, will be set out.

Plaintiff first offered portions of defendant's deposition as alleged admissions against interest. After establishing the relationship of the parties, ownership of Duke and this particular incident, the following appears:

"Q. Was that the first time you know of that your dog ever bit anyone?

"A. Yes sir.

"Q. Did he ever bark at any other boy or person?

"A. The only person he ever barked at was when the trash man came around.

"Q. He barked at the trash man?

"A. He barked at the trash man.

"Q. When he barked at the trash man, did he growl at him or just bark at him?

"A. Barked very violently. I don't remember him growling."

Plaintiff next called defendant's wife as his witness and the following appears:

"Q. This was a collie dog?

"A. Yes sir.

"Q. Did you ever hear him bark at the * * * trash man?

"A. Yes, he did.

"Q. He was at large in the yard and loose?

"A. He was on the back porch.

"Q. Loose—he wasn't on a leash—he wasn't tied up?

"A. No sir.

"Q. You didn't have a muzzle on him at that time?

"A. No sir.

"Q. You did have—Mr. Newsom did have a doghouse in the back yard, didn't he?

"A. Yes sir.

"Q. Did he have a chain to the doghouse?

"A. As I recall, he did.

"Q. At any time prior to this incident, Mrs. Newsom, had you ever seen Duke bite or snap at any of the other children?

"A. No.

"Q. And had he played with all the children during the entire time you had him?

"A. All the children loved him very much.

"Q. And you never had any experience with him injuring any children or grown-ups or anybody else?

"A. No."

Her testimony further explained the presence of the paper which Charles had sought to take from Duke. It appears she had been away from home that morning caring for a sick relative; and at her request, defendant had dressed a chicken on the paper and placed the paper in a wastebasket which he later placed on the back porch while scrubbing the kitchen.

The plaintiff related how he had been bitten and that he and Tommy had previously had fun playing with the dog. His father testified as to the injury, and although he had seen Duke, did not relate anything significant as to his actions except that he ran loose.

The last witness called was plaintiff's mother who gave the following testimony with reference to her observation of a third and apparently older boy being with Duke in defendant's back yard:

"Q. Did you see this particular dog about a week before the dog bit Charlie?

"A. I saw this dog jump at a boy in the neighborhood and I am sure, I am positive, that that dog snapped at that boy.

"Q. Where were you when you saw the dog about a week before?

"A. In the kitchen because we could see right through to their yard in the kitchen.

"Q. Was that the same dog?

"A. The same dog.

"Q. That bit Charlie? What did you see it do?

"A. I saw it just leap up toward the boy and I am positive that that dog snapped at that boy."

■ Plaintiff contends that Duke's admitted habit of barking violently at the trash man is evidence of his vicious propensities. Defendant, however, submits that barking is as natural a canine trait as the wagging of a dog's tail, and quotes an old adage that "a barking dog does not bite". The facts of the instant case are so inconsistent with the quote as to relegate it to curbstone use; but it is common knowledge, especially among non-dog owners, that dogs do bark. The fact it was done with regularity would only tend to confirm it to be a normal habit and all the less reason why an owner would be alerted by it. As stated in Lloyd v. Alton R. Co., 348 Mo. 1222, 159 S.W.2d 267, loc. cit. 272: "The ordinary habits, characteristics and instincts of dogs are matters of common knowledge. Courts take judicial notice of the well known habits of domestic animals."

The evidence given by plaintiff's mother shows that about a week before this injury, Duke had leaped and snapped at an older boy while both were in defendant's yard. This observation was made from her kitchen window two doors away, and even though accepted as entirely accurate, fails to describe the circumstances under which it occurred with sufficient particularity as to give it any definite significance. The court in Maxwell v. Fraze, supra, discussed the necessity for looking at the *circumstances* surrounding previous acts of the dog when it said at page 265 of 344 S.W.2d: "The *circumstances* surrounding the occasion of the biting and its extent demonstrate whether the incident of the prior bite is sufficient evidence or some evidence of a vicious propensity of the dog to inflict injury." In any event, there is no showing of actual knowledge by defendant, and this one isolated instance would not justify holding him with constructive knowledge of it.

■ Plaintiff also submits that the fact a doghouse and dog chain were in the back yard for Duke's use is further evidence of defendant's knowledge he had a vicious dog. He cites the case of Clinkenbeard v. Reinert, supra, where it was held a showing the dog was chained up all day and turned loose as a watchdog at night was evidence of the owner's knowledge the dog was vicious. If plaintiff's present theory is accepted, it would place the dog owner in an impossible position of not knowing whether to restrain or let his dog run loose. There is no obligation to restrain until the duty is evident as shown by all of the reported cases.

■ Plaintiff's last contention is that he made a submissible case on the additional theory of defendant's alleged negligence in allowing the paper to be on the porch at all, and that he should have anticipated the injury exactly as it did occur.

Having determined that Duke did not have a known tendency to bite, his presence at the back porch of his owner's residence was the most proper place he could have been. Although one might conceive of actionable negligent acts by an owner in the care of his otherwise tame dog, this court should not list as one of them an owner allowing his dog at his own back door to eat chicken scraps from the paper upon which it was dressed.

For the reasons herein, plaintiff failed to make a submissible case, and your commissioner recommends that the judgment of the trial court be affirmed.

PER CURIAM.

The foregoing opinion by MORGAN, Special Commissioner, is adopted as the opinion of the Court.

The judgment of the trial court is affirmed

ANDERSON, P. J., WOLFE, J., and GEORGE P. ADAMS, Special Judge, concur.