**CITY OF FREDERICKTOWN, a Municipal Corporation, of the Fourth Class, Plaintiff, and Frank E. Gillett and Nellie Gillett, his wife, Plaintiffs-Respondents,**

**v.**

**Rosina OSBORN, Defendant-Appellant.**

**No. 32943.**

St. Louis Court of Appeals,
Missouri.

May 21, 1968.

Fredericktown and Frank E. Gillett and Nellie Gillett, his wife, alleged that the defendant Rosina Osborn was conducting a commercial dog kennel on her property in said city, and in connection therewith kept a large number of all kinds of dogs on her premises; that defendant's business was in violation of certain specified ordinances of the city; and that it constituted a public nuisance, or a prviate nuisance as to the Gilletts, or both; and that the Gilletts, whose home is adjacent to that of defendant's had suffered special injury and damage by reason of the foul odors generated, and the noise and disturbance created, which rendered their life uncomfortable, their premises unfit for habitation, and prevented them from enjoying a good night's sleep and rest. The prayer was that defendant be enjoined from continuing to operate a dog kennel on her property. Defendant in her answer admitted that she kept at her residence, "* * * certain dogs for the purposes of breeding, raising and selling the same * * *"; challenged the validity of the city's ordinances; denied the remainder of the pertinent allegations of plaintiff's petition; and alleged that she had been required to engage the services of an attorney to defend herself, and prayed that the action be dismissed and that she be allowed a reascnable sum for attorney fees and suit money.

At the conclusion of the hearing the court entered a judgment and decree in which it found that defendant "has been operating her premises as a private nuisance" and ordered her "enjoined from maintaining a dog kennel and from keeping, raising, breeding, and housing dogs in excess of one in number on her premises * * *." By implication, at least, the court denied the city relief on its claim that defendant was maintaining a public nuisance. Only the defendant has appealed, and we will therefore treat the action as do the parties, that is, one for the abatement of a private nuisance.

Roberts & Roberts, Farmington, for defendant-appellant.

Kenneth W. Shrum, Marble Hill, for plaintiffs-respondents.

DOERNER, Commissioner.

In a joint petition filed in the Circuit Court of Madison County, the City of

■ Defendant urges that the trial court erred: (1) in finding a nuisance when

such a finding is not supported by the facts or the law; (2) in granting an injunction because plaintiffs were barred by the statutes of limitation, and by laches; and (3), in granting an injunction which enjoined defendant from keeping more than one dog. Since this is an equitable action we are required to "* * * determine the cause *de novo,* weigh the competent evidence introduced upon the factual issues, and reach our own conclusions based upon that evidence, although we defer to the finding of the trial court where there is conflicting oral testimony involving a determination of the credibility of witnesses who appeared before it. * * *" Mintert v. Gastorf, Mo., 417 S.W.2d 101, 105.

Defendant's property, located in the City of Fredericktown, is known and numbered as 408 Franklin Street, which we gather from the testimony runs in an east and west direction. Plaintiffs alleged and defendant admitted that her parcel of land was approximately 100 feet wide by 200 feet deep, and defendant testified that her backyard, in which she kept her dogs, was 100 feet in width by 150 feet in depth. The yard is surrounded by a wire fence, built 4 or 5 years previously to replace an older one, and contains 4 or 5 little dog houses and 2 small wire pens constructed because, defendant related, she had a couple of little dogs that would slip through the outside fence. The yard is not paved, and there was a conflict in the testimony as to whether the surface of it was bare dirt or whether, in whole or in part, there was sod on it for a part of the year. Defendant conceded that the pens were bare dirt at all times.

Eleven witnesses appeared on plaintiffs' side of the case, of whom nine, including plaintiffs, lived in the immediate neighborhood of defendant. Twenty witnesses appeared on defendant's side, of whom nine, including defendant and her son, likewise lived in the immediate neighborhood. By the words "immediate neighborhood" we mean in the same square block in which

defendant resides, or in the corresponding block on the opposite side of *Franklin* Street, and to better understand their proximity to defendant's property we have prepared from the testimony a plat showing the location of each neighbor. The home of plaintiffs, the Gilletts, numbered 412 Franklin Street, adjoins the defendant's property on her east side and the dog pens and dog houses are located within 18 to 20 feet of their bedroom and kitchen. The property on the west side of defendant's was acquired in July, 1965 by Charles Finch, and occupied by him and his wife from November 11, 1965, until a week before the trial. Their kitchen, Finch testified, was approximately ten feet from defendant's yard where she kept her dogs. Reverend and Mrs. Sheppard's home, numbered 411 E. College, is located directly to the north of defendant's premises and separated from it by a narrow alley.

The evidence established beyond any reasonable doubt that the business operated by defendant is located in a residential neighborhood. In fact, all of the witnesses, defendant's as well as plaintiffs', who were asked to characterize the immediate area expressed the opinion that it was a residential neighborhood. Nor is there any dispute about the nature of the business operated by defendant on her premises. As stated, she admitted in her answer, and also testified, that she was in the business of breeding, raising, and selling dogs. While there was some slight conflict in the testimony concerning the number of dogs on hand at any given time, including at the time of trial, defendant conceded that she had had as many as 30 dogs and an inference may be drawn from the testimony of her son, William, that the maximum number may have been as great as 35. The types of dogs kept, bred and raised by defendant during the 4 or 5 years preceding the trial, according to the evidence, included Pekinese, Boxers, German Shepherds, Poodles, Beagles, Bassetts, Dachshounds, and Spitz.

Whatever their precise number, we believe it is obvious that the backyard in which defendant kept her dogs was small in relation to the number on hand, and that the homes of plaintiffs and the Finchs on the adjoining lots were in close proximity to the area in which the dogs were maintained. Under those circumstances we could take judicial notice of the ordinary habits, characteristics and instincts of dogs, and the likely effect on defendant's immediate neighbors, Lloyd v. Alton R. Co., 348 Mo. 1222, 159 S.W.2d 267; Mitchell v. Newsom, Mo.App., 360 S.W.2d 247, but in this case we need not do so for a careful review of the record has convinced us that the overwhelming weight of the evidence, much of it from defendant's own witnesses, abundantly supported plaintiffs' complaints regarding the noise, odors, unsanitary conditions, and other objectionable features resulting from the operation of defendant's business. Understandably, considering the nature of dogs, neither defendant nor any of her witnesses testified that the dogs never barked. In fact, several observed, as did her witness Verna Stanfield, that "All dogs bark." Defendant herself testified that her dogs barked if someone went through the alley or when her neighbor (unnamed) turned his dog out and it would run up and down the fence. There was testimony that when one dog barked all did so. As might be expected, in the main the reaction of the residents of the immediate neighborhood to the noise varied according to their proximity to defendant's property. Charles Finch, an adjoining neighbor, related that the dogs barked nearly every time he stepped out of his back door, and both he and his wife testified that the dogs also barked at night and so disturbed them that they were unable to sleep. Reverend and Mrs. Sheppard stated that the dogs frequently barked, and that the noise was particularly noticeable in the summer. Mrs. Ruth Moore, who resides two doors east of defendant, said that the barking occurred at night as well as during the day, and

that it prevented her from sleeping and getting her rest at night. Plaintiff Frank E. Gillett stated that the barking frequently awakened him and his wife 5 to 7 times a night with the result that they were a bundle of nerves, and on numerous occasions had left their home to get a good night's sleep. Mrs. Gillett described the barking as "terrific" both day and night, and testified that in addition to disturbing their rest it had prevented their use of their backyard the preceding summer because when they tried to use it the dogs would gather at the fence and bark.

Regarding plaintiffs' complaint of odor, the conflict in the testimony was not so much whether an odor was generated as its extent and degree. There was no dispute about the fact that the dogs satisfied their natural needs by eliminating in defendant's backyard. Defendant testified that she gathered up the excrement once each day and buried it with lime in her backyard, but conceded that such body waste was not odorless and that it remained on the ground for some period of time because she was not out there all of the time. Dr. Meador, defendant's veterinarian, who testified on her behalf, stated on cross-examination that there was an odor connected with a dog's body waste, as did her son William. Reverend Sheppard said that the odor emanating from defendant's premises was so bad that they couldn't entertain in their backyard, and Mrs. Sheppard related that when she tried to sit in their yard in the summer she had to get up and go in the house on occasions. Mr. Finch testified there was an odor, particularly in warm weather, and his wife described it as a "terrible odor." Mrs. Moore said that it was so bad that she had to keep her back door closed. And Mr. Gillett testified that while there always was an odor, which made it impossible for them to use their backyard for cookouts, it was tremendously worse following wet, warm weather. He also made the point that in addition to dropping excrement the dogs urinated in the

defendant's backyard, that the urine soaked into the soil, and that it was constantly giving off an odor. In addition, there was testimony of odor emanating from the bodies of the dogs, for as one of defendant's witnesses expressed it, " * * * There is odor around one dog even." Defendant testified on direct examination that she washed the dogs, but did not state how often; and when asked by her counsel where she washed them replied that, "I do it in my bathtub."

The evidence further established, in our opinion, that the excrement from the dogs attracted flies, and that there were an unusual number in the neighborhood. Dr. Meador conceded on cross-examination that flies were attracted to the body waste of animals; and Gerald Cook, a sanitary inspector employed by the Madison County Health Department, called by plaintiffs, affirmed that flies were attracted to any kind of animal feces and stated they would range over an area of 400 to 600 feet. Dr. A. P. Basler, defendant's chiropractor, admitted on cross-examination that flies are carriers of germs and diseases.

It is our conclusion that the evidence also demonstrated that defendant's operation of her business created other discomforts, problems and inconveniences for plaintiffs and their immediate neighbors. While defendant testified that Poodles do not shed hair, she had kept and raised numerous other breeds, and the evidence disclosed that the hair was blown upon clothes hung in the adjoining yards and kept the Finchs from having barbecues on their premises. Reverend Sheppard and others related that some of defendant's dogs on occasion got through her fence and onto their properties. There was also testimony from defendant's son, William, that the mating of the dogs usually occurred in one of the pens in defendant's backyard, and as Dr. Meador agreed, when a female dog is in heat a group of dogs become " * * * quite excited. They will raise a fuss around them." Other evidence indicated that occasional fights occurred among the dogs, that when little pups died their bodies were buried with lime in defendant's backyard, and that when adult dogs died their bodies were burned by defendant.

Generally speaking, our courts have recognized that an owner has the right to the exclusive possession and control of his property, and the right to devote it to such lawful uses as will subserve his interests. Hoffmann v. Kinealy, Mo., 389 S.W.2d 745; Clinic & Hospital, Inc. v. McConnell, 241 Mo.App. 223, 236 S.W.2d 384. But such rights are not absolutes, for " * * * It is the law that one may not make such an unreasonable, unusual or unnatural use of his property that it substantially impairs the right of another to peacefully enjoy his property. Neither is it questioned that a court of equity may issue an injunction enjoining the use of property or a manner of carrying on a business if either constitutes a nuisance injuring another or his property. * * *" Schott v. Appleton Brewery Co., Mo.App., 205 S.W.2d 917, 920; Crutcher v. Taystee Bread Co., Mo., 174 S.W.2d 801. Other than those acts, businesses or structures which are nuisances per se there is no exact rule or formula by which the existence or nonexistence of a nuisance may be determined. Crutcher v. Taystee Bread Co., supra; Biggs v. Griffith, Mo.App., 231 S.W.2d 875. It is obvious that the use of property in one locality and under some circumstances may be reasonable, while such use in another locality and under other circumstances would be unreasonable and constitute a nuisance. Necessarily, therefore, whether a particular use is or is not a nuisance must be determined from the facts in each case, such as the locality, character of the neighborhood, nature of the use, extent and frequency of the injury, the effect upon the enjoyment of life, health, and property of those affected, and the like. Schott v. Appleton Brewery Co., supra; Clinic & Hospital, Inc. v. McConnell, supra. Thus our appellate courts have approved or

issued injunctions prohibiting or restricting the operation of various businesses when by reason of excessive noise,[1] offensive odors,[2] injurious fumes and dust,[3] embarrassing exhibitions,[4] or the nature of the activity,[5] they unreasonably interfere with nearby residents' comfortable enjoyment of their homes, disturb their sleep, affect their health, diminish the value of their properties, or disconcert them.

■ While our courts have dealt with cases involving the keeping of pigs and the breeding of horses in urban areas, so far as our research has disclosed the question of whether the keeping of dogs in a residential neighborhood may constitute an enjoinable nuisance is one of first impression in this state. However, there is an abundance of authority from other states, collected in an excellent note in 11 ALR 3d 1399, p. 1404, which is summarized as follows (p. 1404):

"While the keeping of a dog or dogs is not a nuisance per se since the dog is traditionally deemed to be one of the beasts friendliest to man, the keeping of such animals may amount to an enjoinable nuisance where it interferes with the peace, quiet, and normal enjoyment to which a person is entitled in the use of his home, or where the keeping of dogs results in impairment of the monetary value of nearby homes either through the undesirability of living near barking dogs or through property damage inflicted by the animals."

From his decree it is apparent that the chancellor found, as do we, that the barking and other noise created by the dogs kept by defendant in the operation of the business on her premises, the objectionable odors emanating from them and their body wastes which permeated the atmosphere, and the unhealthful and unsanitary conditions necessarily resulting from their presence seriously and unreasonably interfered with the peaceful and normal enjoyment to which the plaintiffs were entitled in the use and occupation of their home, prevented them from obtaining their required rest and sleep, caused them discomfort and inconvenience, and was injurious and detrimental to their health and well-being. Under the circumstances of this case we are firmly of the opinion that defendant's business constituted an enjoinable nuisance.[6]

1. Noise. Use of loud speakers—Clinic & Hospital, Inc. v. McConnell, 241 Mo.App. 223, 236 S.W.2d 384; Biggs v. Griffith, Mo.App., 231 S.W.2d 875; automobiles on parking lot—Rhodes v. A. Moll Grocer Co., 231 Mo.App. 751, 95 S.W.2d 837; operation of quarries—Lademan v. Lamb Const. Co., Mo.App., 297 S.W. 184; Blackford v. Heman Const. Co., 132 Mo. App. 157, 112 S.W. 287.

2. Odors. Operation of barbecue stand—Deevers v. Lando, 220 Mo.App. 50, 285 S.W. 746; manufacturing rubber products—State ex rel. Renfro v. Service Cushion Tube Co., 316 Mo. 640, 291 S.W. 106; maintenance of pigsty—Whipple v. McIntyre, 69 Mo.App. 397; operation of distillery and the slopping of hogs—Smiths v. McConathy, 11 Mo. 517.

3. Fumes and dust. Noxious gases from chemical plant—Kelley v. National Lead Co., 240 Mo.App. 47, 210 S.W.2d 728; dust from quarry—Blackford v. Heman Const. Co., 132 Mo.App. 157, 112 S.W. 287.

4. Breeding of animals—Hayden v. Tucker, 37 Mo. 214; McNulty v. Miller, 167 Mo. App. 134, 151 S.W. 208.

5. Maintenance of undertaking business—Leffen v. Hurlbut-Glover Mortuary, Inc., 363 Mo. 1137, 257 S.W.2d 609; Clutter v. Blankenship, 346 Mo. 961, 144 S.W.2d 119.

6. Ensign v. Walls, 323 Mich. 49, 34 N.W. 2d 549; Robertson v. Shipp (La.App.), 50 So.2d 699; Nichols v. Simpson (Tex. Civ.App.), 308 S.W.2d 613; Miller v. Coleman, 213 Ga. 125, 97 S.E.2d 313; Knowles v. Central Allapattae Properties, Inc., 145 Fla. 123, 198 So. 819; State ex rel. Fuller v. Stillwell, 114 Kan. 808, 220 P. 1058; Roche v. St. Ro-

We find no merit in defendant's contentions that plaintiffs' action was barred by the five year statute of limitations, or by laches. Such matters are affirmative defenses and were not pleaded as required by Civil Rule 55.10, V.A.M.R. Recognizing that her answer was deficient in that respect, defendant seeks to invoke the benefit of Civil Rule 55.54 concerning the trial by express or implied consent of issues not pleaded. But there certainly was no express consent to the trial of such issues in this case and a careful review of the record has convinced us that none can be implied from the manner in which the case was tried. The purpose of Civil Rule 55.10 is not merely technical, but to give notice to the opposing parties in order that they may be prepared on the issues, White v. Wilks, Mo., 357 S.W.2d 908, and a plaintiff's consent to the trial of non-pleaded affirmative defenses should not be held to be implied unless it clearly appears that he tacitly agreed to join issue on such defenses. Nevertheless, this being an equity case, we have considered defendant's points on their merits. The statute of limitations applicable to abatable nuisances, as distinguished from nuisances permanent in character, is that prescribed for the acquisition of title to land, or ten years, not five, as defendant maintains. Skinner v. Slater, 159 Mo.App. 589, 141 S.W. 733; Bradbury Marbel Co. v. Laclede Gaslight Co., 128 Mo.App. 96, 106 S.W. 594. The evidence falls far short of showing that the injurious and disturbing conditions presently existing have prevailed for that period of time. Nor does the evidence sustain defendant's tardily asserted claim of laches, for there was no showing that plaintiffs' delay in bringing this action caused defendant to change her position to her detriment or that she was prejudiced in any way by the alleged delay, necessary elements for the application of that doctrine. Rebmann v. Rebmann, Mo., 384 S.W.2d 663; Douglass v. Douglass, Mo., 363 S.W.2d 566; Kizior v. City of St. Joseph, Mo., 329 S.W.2d 605.

Defendant argues that the remedy of injunction is a harsh and drastic step and that equity is reluctant to permanently enjoin the operation of a legitimate business, citing Biggs v. Griffith, Mo. App., 231 S.W.2d 875. It is true that where the objectionable conditions which create the nuisance can be eliminated by restrictions or changes in the method of conducting the business a court of equity will require them to be made and not enjoin the total operation of the offending business, as in Greene v. Spinning, Mo.App., 48 S.W.2d 51. But as is recognized in the Biggs case and the numerous Missouri cases heretofore cited, a court of equity will enjoin the operation of a business where that is necessary to abate the nuisance. Defendant produced no evidence that the matters of which plaintiffs complain, the barking and noise, the odors, the discomforts, and the unsanitary and unhealthful conditions resulting from the operation of her business, can be eliminated or improved to such an extent as to abate the nuisance, and in the light of the common knowledge as to the habits, characteristics and instincts of dogs, Mitchell v. Newsom, Mo.App., 360 S.W.2d 247; Lloyd v. Alton R. Co., 348 Mo. 1222, 159 S.W.2d 267, and the residential character of the neighborhood, we are of the opinion that the only adequate means of affording plaintiffs the relief to which they are entitled is an injunction prohibiting the defendant from operating a dog kennel on her premises and from keeping, breeding and raising dogs thereon for the purpose of sale or commerce. Ensign v. Wall, 323 Mich. 49, 34 N.W.2d 549; Nichols v. Simpson (Tex. Civ.App.), 308 S.W.2d 613. However, we think there is merit in defendant's complaint as to that part of the judgment and

---

main (La.App.), 51 So.2d 666; Herring v. Wilton, 106 Va. 171, 55 S.E. 546, 7 L.R.A.,N.S., 349; Rachlin v. Drath, 26 Wis.2d 321, 132 N.W.2d 581, 11 A.L.R.3d 1393; Krebs v. Hermann, 90 Colo. 61, 6 P.2d 907, 79 A.L.R. 1054.

decree which restrains the defendant from keeping more than one dog as a pet.

Accordingly, the judgment and decree is reversed and the cause remanded with directions to enter a judgment and decree in conformity with our views expressed herein. And in view of the result reached, we deem it equitable that four-fifths of the costs be assessed against defendant-appellant and one-fifth against plaintiffs-respondents.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court.

Accordingly, judgment and decree reversed with directions.

ANDERSON, P. J., and RUDDY, and JAMES H. KEET, Jr., Special Judge, concur.